THE PLANTERS AND MINERS' BANK *vs.* NEEL, receiver.

1. The issue being whether a bank was indebted to the estate of a decedent, admissions made by the administrator of the estate, while occupying that position, that the bank owed the estate nothing, were admissible, he having brought the suit, although at the time of the trial a receiver had been appointed to take charge of the estate.

2. Generally the cashier of a bank, who made a trade involved in the issue on the trial of a case, is not a competent witness, where the other party to the contract is dead, the bank having acted, spoken and dealt through such cashier. But if the receiver of the decedent's estate introduces to the jury the sayings or writings of the cashier, the latter may explain such statements or admissions, and give all that transpired at the time concerning that transaction; especially if he was agent both for the bank and for the other contracting party.

3. Where an instrument was set out in a declaration as an inducement or foundation of the suit, as stating, "I have renewed your draft," etc., and the paper offered in evidence under the declaration stated that "I have received your draft," etc., and the dates of the two instruments were different, the evidence was inadmissible. If the instrument was a paper sued on, the error was fatal; if not, its execution should have been proved.

4. The character of the deceased contracting party as a man of close attention to business, was admissible as throwing light on the transaction, under all the circumstances of this case.

(*a.*) The tendency of the courts is to open the doors wider to let in testimony.

March 10, 1885.

Administrators and Executors. Evidence. Banks. Corporations. Witness. Before Judge FAIN. Bartow Superior Court. July Term, 1884.

To the report contained in the decision, it is only necessary to add the grounds of the motion for new trial, which were as follows:

(1.) Because the court refused to permit the defendant to prove that, while Gray was Tumlin's administrator, he admitted that the defendant owed nothing to the estate on the subject matter of this suit, defendant also offering to prove the naked fact of such admission. [The court added to this ground the following note: " Gray stated that, upon or after investigation, his mind came to a conclusion as to the validity of this debt. Plaintiff's counsel objected to his stating what conclusion his mind came to, and the court held that he could not give his conclusion or opinion, but that he could state any facts from which he formed his opinion, and excluded no admission independently."]

(2.) Because the court refused to permit a witness to testify that, as cashier of defendant, the witness (Peacock) and Tumlin made a trade by which the draft mentioned in the receipt of the cashier, attached to the declaration as an exhibit, was purchased from Tumlin by the defendant and paid for,—Tumlin's death, and the witness's acting for the bank in the trade being proved, and it being also proved that the witness had no stock in the bank, and was not interested in it in any way at the time of the trial, nor did he ever have any interest in the result of this suit; that this trade occurred in 1873, after the date of his letter to Tumlin set out in the declaration; that the bank suspended in 1876, and had done no business since; that Peacock was, when the trade was made, and has been continuously from the organization of the bank until Tumlin's death, the latter's confidential agent and adviser and the custodian of his choses in action, and in this trade made the figures for Tumlin; and Tumlin acted on his advice, and with his assistance, in making this trade,—the bank's officers, when Peacock was employed by it, and ever since, knowing of his agency for Tumlin. Defendant offered also to prove by said Peacock that the terms of this trade were, that the

v 74-37

bank paid Tumlin $2,500 cash for this draft, and was to pay him the sum of $1,547.80 as soon as collected from Stiles, and that this should be in full payment for the draft, which then belonged to the bank. This also was excluded by the court. [The court added the following note: "Peacock (the witness) testified that he had no interest at the time of the trial; did not say he had none when he made contract with Tumlin."]

(3.) Because the court admitted in evidence a letter from Tumlin to the cashier of the bank.—The objection was that the paper admitted did not correspond with the copy annexed to the declaration, and that its execution was not proved. [The paper offered in evidence was dated August 25, 1873. It stated, "I have received your draft," etc. It was not signed, as was the paper sued on, but on its back was endorsed, "Acknowledged. D. W. Peacock, cashier." The copy paper sued on was dated Aug. 25. 1876, though it was described in the declaration as dated Aug. 25, 1873.] It stated "I have renewed your draft," etc.

(4.) Because the court refused to allow the defendant to prove that a deposit check, made by the cashier of the bank at the time of the trade with Tumlin, and shown to be lost, showed $2,500 paid to Tumlin at the time of the trade.

(5.) Because the court refused to allow the defendant to prove that Gray, the former administrator, abandoned the suit because he concluded that the debt claimed was paid. [The court added the following note: "A. P. Wofford swore, and it was not objected to, that after they talked with Peacock (the cashier), Gray told Peacock he would not prosecute the case any further."]

(6.) Because the court refused to permit defendant to prove that Lewis Tumlin was a good business man, close and active in managing his business, a close collector, and looked carefully after his business.

(7.) Because the court refused to allow Peacock to testify that the $2,500 paid Tumlin was not charged on the

bank books, because at the time it was paid another customer paid into the bank $2,500, which balanced the $2,500 paid Tumlin, and thus made no difference in the daily cash balances, nor in the loans and discounts balances.

(8.) Because the verdict is contrary to law and evidence, and without evidence to support it.

The motion was overruled, and the defendant excepted.

John W. Akin, for plaintiff in error.

W. K. Moore; Graham & Graham, for defendant.

Jackson, Chief Justice.

This is an action for the recovery of certain sums of money alleged to be due by the Planters and Miners' Bank to the estate of Lewis Tumlin. It was brought by Gray as administrator on Tumlin's estate, but is now proceeding in the name of Neil, receiver. The foundation of the suit is a receipt as follows:

"Planters' and Miners' Bank,
Cartersville, August 25th, 1876.

   Col. Lewis Tumlin: I have renewed your draft on W. H. Stiles & Co., and now have a draft drawn by W. H. Stiles & Co., accepted by R. M. Stiles, which will be placed to your credit when paid.
D. W. K. Peacock, Cashier."

The allegation is that this draft to the amount of $3,856.57, besides interest from August, 1873, its date, has been collected and the bank refuses to pay it. The action was amended by alleging that the Stiles draft was Tumlin's property, held August 28, 1873, by the bank for collection, and on that day the bank collected it in full, thus receiving it for the use of Tumlin, and undertook to pay the same, etc

Besides the general issue, the bank pleaded that it had collected only $1,537.00 on the draft and paid Tumlin; that at his death, his own pass-book showed five thousand dollars due him by the bank from deposits, etc.; that this

was placed to the credit of his administrators, and after several years dealing between the Bank and the administrator, the bank failed, owing the administrator fifteen hundred dollars, for which the administrator sued, got judgment and collected the money, and received it in full satisfaction of all the bank owed the estate. The jury found for the assignee $1,135.73 principal, and $636.40 interest. To the refusal of a new trial the bank excepted, on the grounds therein alleged, and assigns the same for error.

1. Any admission made by Gray, while administrator, that the bank owed Tumlin's estate nothing, is admissible. He brought the suit, and if he was satisfied for any reason that the bank did not owe Tumlin's estate, and admitted it to any person from calculations or otherwise, such conclusion and admission, while clothed with the trust, is admissible. If it were a conclusion of his mind only and not expressed while clothed with the trust, but drawn from him on the stand after he was dismissed and Neel was made receiver, such conclusion is not admissible. The record is confused as to what it was precisely; taking the motion and the judge's statement together, and as the case will be tried again, we give the above as the law to govern its admission or rejection on the next trial.

2. We think that as Peacock was the cashier of the bank, who made the trade with Tumlin, he is not generally a competent witness, inasmuch as the bank acted, spoke and dealt through him, and Tumlin was dead, with whom he dealt. See *Flournoy & Epping vs. Wooten, ex'r, et al.,* 71 *Ga*, 168; *Central Railroad Co. vs. Papot,* 59 *Ga.,* 342.

But if the receiver introduced to the jury the sayings of Peacock, or his writings, which are but written sayings, he may explain such statements or admissions and give all that transpired at the time concerning that transaction; especially may this be done, if he was agent both of the bank and of Tumlin. 51 *Ga.,* 624.

3. We are clear that the letter of the cashier to Tumlin,

which is the inducement or foundation of the suit, should not have been admitted, because that offered was not the paper set out in the declaration or appended thereto. In the one case, the paper uses the words, "I have renewed your draft," etc., and in the other, "I have received your draft," etc., and the dates of the two instruments are different. If the instrument be a paper sued on, the error is fatal; if not, its execution should have been proved. So that, in either event and upon both grounds of objection, it should have been rejected as evidence.

4. We think that Tumlin's character as a man of close attention to business may have thrown some light on the transaction under all the circumstances surrounding this case, and was admissible for what it was worth as such a circumstance. The tendency of the courts is to open the doors wider to let testimony in, and as this case is by no means a clear one, but seems much involved in doubt as to the real truth, anything tending to let in a ray of light, however little, should not be excluded.

Inasmuch as the case is to be tried again and more testimony may be adduced *pro* and *con* the verdict reached by the jury this time, we forbear to express any opinion on the merits of the case upon the facts this record now discloses.

Judgment reversed.