## HIGGINS *v.* SOUTHERN RAILWAY COMPANY.

1. A railroad conductor represents the company by which he is·
employed, in determining what persons are entitled to ride
upon trains committed to his care; and his act in expelling
from a train a person not entitled to ride thereon as a passen-
ger, being one performed by him in the line of his duty, is in
law the act of the company.
2. Even a trespasser who intrudes upon a freight-train under a.
fraudulent arrangement with an inferior employee who has
no authority in the premises, is entitled to protection against
violence on the part of the conductor, wantonly and unneces-
sarily exercised in expelling him from the train; and for·
injuries to his person resulting from such violence, the railroad
company is liable.
August 10, 1896.

Action for damages.   Before Judge Ross.   City court·
of Macon.   December term, 1895.

Edward T. Higgins, by his next friend, brought suit.
against the railway company for damages.   Upon demur-
rer his petition was dismissed for want of cause of action.
The petition alleges, that on Nov. 21, 1894, plaintiff was·
riding on a freight-train on defendant's road from Atlanta
to Macon, by leave and permission from the flagman on said
train, he having paid the flagman twenty-five cents for the·
privilege of so riding, which was accepted by the flagman,
and in consideration of which he gave plaintiff permission·

to ride on the train, telling him to ride on top of the caboose, which he did.    When the train reached the coal-chute near Juliette in Monroe county, which is twenty-three miles north of Macon, the conductor of the train, named Buckmaster, discovered plaintiff on top of the caboose, and said to him, "Come here, you d—n little s—n of a b—h." Plaintiff started to run across the caboose in order to get off, but before he could get any distance the conductor fired a pistol at him, the ball going through his thigh.    As soon as he realized that he was shot, he cried to the conductor, "For God's sake don't shoot me again"; whereupon the conductor said, "Get off, God damn you, or I will shoot you again."    Plaintiff thereupon jumped from the caboose to the coal-car and thence to the ground, during which time the conductor was looking all around for him with the pistol in his hand.    Plaintiff ran about 100 yards and met the same flagman, who told him he had better look out or the conductor would shoot him again.    He continued to run until he fainted from loss of blood.    On the next morning the same conductor came back and took him to Juliette where he had his wounds dressed.    At the time of the injury Buckmaster was the agent and servant of defendant, with full charge, power and control of said train.    Plaintiff contributed in no wise to the injury, and did nothing whatever to justify or cause the conductor to shoot him; and alleges that the injury was caused by the gross and wanton carelessness and negligence of defendant through its agent, the conductor, without any just cause or provocation. Plaintiff was 18 years of age.    He sets forth his damages resulting from pain and suffering and incapacity to labor.

Preston, Jordan & Ayer, for plaintiff.
Hill, Harris & Birch, for defendant.

LUMPKIN, Justice.

The plaintiff's action was dismissed on demurrer.    It appears from the allegations of his declaration that he was

riding upon a freight-train of the defendant "on top of a caboose," with the permission of a flagman, but without the knowledge or consent of the conductor. The latter, upon discovering the plaintiff, cursed him; and while he was running "across the caboose in order to get off," shot him with a pistol, inflicting a severe and dangerous wound upon his thigh.

Undoubtedly it is the duty of a railroad conductor to determine what persons are entitled to ride upon a train committed to his care, and to expel any person found upon such train who has no right to be there. In so doing, his acts are, in legal contemplation, the acts of his master, for the reason that they are performed in the line of his duty. For the purpose of expelling such a person from a train, the conductor may lawfully use whatever amount of force is reasonably proper and necessary; but he certainly cannot commit, even upon a trespasser, a malicious, wanton and murderous assault.

The plaintiff, according to his own allegations, was undoubtedly a trespasser. The permission given him to ride upon the train by the flagman amounted to nothing, and the conductor would unquestionably have been justified in ejecting him from the train, if he had done so in the proper manner. It is certainly true that the means employed by him were not only unauthorized, but criminal. At the same time, the object he sought to accomplish was strictly in the line of his employment, and the master is, in law, responsible for the damages which resulted to the plaintiff through the violent and unlawful means employed by the conductor in discharging his duty.

This case differs from that of *Georgia Railroad Co.* v. *Wood*, 94 *Ga.* 124. There, the unlawful act of violence committed by the company's servant, even upon the assumption that it was a part of his duty to keep trespassers off the train, occurred when it could no longer be effective for this purpose; and hence, the act in question was un-

doubtedly beyond the scope of the employment in which the servant was engaged. It was, however, intimated in that case that if the act of the servant had been done in attempting to prevent a trespass upon the company's property, and the trespasser had been injured by the company's servant on account of his using more force than he ought to have used in accomplishing his purpose, the company would have been liable.    *Judgment reversed.*