## ANDERSON, adm'r, v. SOUTHERN RAILWAY CO.

1. Until the adverse party attacks the credibility of a witness, either for bad character or because of contradictory statements, the party calling him can not introduce evidence in support of his character for veracity. A mere conflict between the testimony of a witness and that of others who have testified on the opposite side will not authorize the admission of evidence to sustain the credibility of such witness. The character of the defendant's witness for veracity was not put in issue by an allegation in the plaintiff's petition, and testimony introduced in support thereof, to the effect that such witness, as agent of the defendant, committed an assault which resulted in the death of the person for whose homicide the plaintiff sued.

2. Where the petition in an action against a railway company for a homicide alleged that a given person got upon the defendant's train in company with the decedent, and on the trial such person was sworn and called to the witness-stand by the plaintiff, but withdrawn by him without being examined, and there was nothing to show that he was in any way under the power and control of the plaintiff, it was error to charge that "It is a rule of law on the subject of evidence, that where a party has evidence in his power, and within his reach, by which he may repel

a claim or charge against him, and omits to produce it, or, having some certain and satisfactory evidence in his power, relies on that which is of a weaker or inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted."

3. If either of the contentions of the plaintiff as to the cause of the death of his intestate's son was well founded, the defendant was liable whether the decedent was rightfully or wrongfully on its train. It was therefore not error to reject, as irrelevant, testimony tending to show that he was rightfully on the train.

4. A general assignment of error upon a designated portion of the judge's charge will be considered for the purpose of ascertaining whether or not the particular language thus complained of states a correct abstract principle of law.

(a) If it does, then the investigation here must end; for in the absence of a specific assignment of error, this court will not inquire whether the words excepted to are or are not adjusted to the issues and facts of the case.

(b) If an instruction, excepted to in general terms, be erroneous because it is not a correct or accurate statement of the law, then, as all error is presumably prejudicial, the record will be examined for the purpose of ascertaining whether or not the party complaining has really been injured by the giving of such instruction.

(c) When a portion of a charge, which is complained of generally, contains several distinct propositions and one or more of the same is correct in the abstract, then the general assignment of error is not good and will not be further considered, because it in effect improperly alleges that all of such portion is erroneous, and does not show to which of the propositions, the correct or the erroneous, it is intended to take exception.

Argued February 14, — Decided June 14, 1899.

Action for damages. Before Judge Felton. Bibb superior court. November term, 1897.

The action was for the homicide of the plaintiff's son, Andrew Wright, upon whom, she alleged, she was dependent for her support. She alleged, in brief, that he was riding upon a coal-car of a freight-train of the defendant, when he was approached by the conductor or another of the employees connected with the train, who forcibly ejected or attempted to eject him from it, while it was in motion, and in such a manner as to cause him to fall between the cars, which ran over him and killed him; that it was usual for persons going on fishing trips to be allowed to ride as passengers on coal-cars of the defendant upon that part of its road, and that the deceased, on the occasion in question, went upon the train for this purpose, intending to pay his fare; and that even if he was a trespasser, the manner in which it was sought to eject him was negligent and

wrongful.  One count of the declaration alleged that the conductor (McCrary) knocked him off the car by throwing a lump of coal at his head.  Pending the action the plaintiff died, and her administrator was substituted as plaintiff.  The trial resulted in a verdict for the defendant.  The plaintiff's motion for a new trial was overruled, and the movant excepted.  Besides the general grounds and those set out in the first, second, and third divisions of the opinion, the motion contained grounds alleging that the court erred in charging the jury as follows :

(13) "Now what would be ordinary care and diligence in ejecting · him from that train would be a question of fact. Should the conductor have sought, and should the jury believe that the evidence establishes that he did seek, to eject him from the train because of his being a trespasser upon it, I, say, should that be true, what would be the exercising of ordinary care and diligence on the part of the conductor to so eject him would be a question of fact which you would determine.  In that connection I charge you that the fact, if such was the fact, that the deceased, Andrew Wright, jumped from the train, even though it was moving or even though the conductor was coming towards him, would be such negligence on his part as would prevent a recovery in this case.

(14) "The jury will perceive that where one is a trespasser upon the train, it holds the conductor liable, I should say railroad company liable, for the actions of the conductor in seeking to eject him from the train.  If it should be apparent from the evidence that the injury was caused by the negligence of the person sought to be ejected (in this case Andrew Wright), should you believe that the conductor did actually seek to eject him from the train, then the plaintiff would not be entitled to recover, for the reason that the injury would have resulted from his own negligence in seeking to jump from the train.

(15) "The plaintiff's right to recover in this case must rest, should you believe in this case that the conductor sought to eject him, upon the proof showing that the conductor failed to exercise reasonable care and diligence in ejecting him, and that the plaintiff did not contribute to his injury by his own negligence.

(16) " With reference to the question of whether the deceased, Andrew Wright, was a passenger upon the train, I charge you this, that one can not in this State, upon a freight-train that is then moving, not at a station for the reception of passengers, put himself upon the freight-car placed there by a railroad corporation, not placed in that train by the railroad corporation for the purpose of carrying passengers, but for the purpose of carrying freight, and charge, by the simple fact of being upon that part of the train, the railroad company with extraordinary diligence on the ground that he was a passenger.

(17) " You will understand that the defendant denies in this case that they knew of the presence of this deceased person upon the train; denies also that they even sought to eject him from that train.

(18) "If the jury should believe that the evidence establishes in this case that the deceased, Andrew Wright, climbed upon that train for the purpose of obtaining a ride upon some of the freight-boxes of that train, and that he either jumped off because he saw the conductor coming, or that he was shaken off by the movement of the train or jostling of the train, or if the jury should believe that in attempting to get upon the train he was killed by the cars of the company, he would not be entitled to recover, that is the plaintiff would not be entitled to recover in this case.

(21) "Now the first section which I gave you with reference to the matter of presumption is this.  Now I will read you what the Supreme Court says in a given case, and as it is stated in technical terms, and I presume you will understand it; if you do not I will explain it to you, because my sole effort in every case is that I may so explain it that the jury may understand what I conceive to be the law of the case.  'Relatively to one to whom no diligence whatever is due, there can in legal contemplation be no negligence at all in causing him a personal injury.'  That means that a person to whom the railroad company in a case of injury owed no diligence would not be a case where in contemplation of law the presumption of negligence would arise against them.  Relatively to one to whom no diligence whatever is due, there can in legal contemplation

be no negligence at all in causing him a personal injury. And right there let me say, one who jumps upon a moving train and who is not a passenger, under the rules I gave you yesterday for determination of what a passenger was, is a trespasser in law, and as to that person the railroad company owes no diligence at all further than this, that if they permit him to ride there and he should be injured with their knowledge, he then becomes a passenger by sufferance, [and] to that extent they would then owe him a duty, provided he was injured in consequence of his riding on the train with the knowledge of the officers of the company.

(22) "To illustrate what I mean, suppose a person who came and crawled upon the top of a railroad-train, and the conductor should say, 'all right, you can ride if you want to, but I will not charge you for it,' and with the permission of the conductor the tramp should be permitted to ride (I use the word 'tramp' as a person of no fixed occupation or abode), and the conductor permitted him to ride, that might raise a case where the question of diligence of the company would be one that would be at issue, if from any negligence in running that train that tramp should be injured. But if he was there and nobody knew anything about his presence, no matter how the train was run, they would not owe him any duty, he assuming the risk when he got on the train, and therefore, being in the position of a trespasser, they owed him no duty of diligence. But, and here is the question that always arises even though one is a trespasser upon a train, the conductor, the officer in charge of that train, has no right to make a criminal assault upon him even in the discharge of his duty; it would be his duty to eject him from the train, and to do so the law would require of the conductor that he exercise reasonable care and diligence in ejecting him from the train, so as to bring no injury or cause no injury to the person of the party, even though he was a trespasser. If the injury in this case to Wright was caused by the act of the conductor in unlawfully assaulting Andrew Wright and knocking him off the train in such a manner as to cause the train to run over him and kill him, the plaintiff would have a right to recover. But if Andrew Wright,

on the other hand, either in endeavoring to get upon the train, or after he was upon the train, either was knocked off by the jolting of the train, or jerking or pulling of the train, or stopping of the train, the company owed him no diligence whatever, and he was a trespasser and had no right there whatever.

(23) "Or further, if, being upon that train, he saw the conductor coming towards him for the purpose, as he supposed, of putting him off, and he voluntarily jumped from the train, he would have no right to recover at all, because if it was dangerous for him to jump and he jumped, he assumed the danger under the law and took the consequences; but if the conductor knocked him off or pushed him off, and in so doing failed to exercise ordinary care and diligence, then the plaintiff would be entitled to recover.

(24) "The jury will of course understand, if the injury did not come from an effort of the officers to remove him or came by his jumping on or jumping off the train, or jumping on or off while the train was in motion, he would not be entitled to recover.

(25) "If he ordered him off and the man jumped, they can not recover. If he simply gave him an order to get off this train and he piled off, he can not recover.

(26) "When an action is brought for a personal injury caused by the running of the locomotive or cars of a railroad company, the presumption of negligence does not arise against the company unless it appears that at the time of the injury there was due from the company to the person injured some degree of diligence to prevent that injury. The burden of proving it owed no diligence is not upon the company, but the plaintiff must show that, relatively to the safety of the person injured, some diligence was due by the company. Now you see, therefore, as soon as he does this the presumption immediately arises that the company's negligence caused the injury, and in order to escape liability it must rebut this presumption by showing the observance on its part of such diligence as was due. 'After much deliberation we are satisfied nothing even in the broad language of the section of the code (which I have just read you) relieves the plaintiff in cases of this character,'

that is, the party injured, 'from the necessity of showing that a duty of diligence, such as we have mentioned, existed; or imposes upon a railroad company the burden of proving negatively the contrary. The presumption of negligence is neither more nor less than a presumption that there was a breach of diligence; such a breach could not of course be presumed in a case where it was affirmatively proved, as a matter of fact, that no diligence at all was due. If therefore it is incumbent on the plaintiff to make the duty of diligence, relatively to the person injured, appear, and he fails to do so, the case must stand upon the same footing; for as to what a plaintiff is required to show, that which does not appear does not exist.' The last paragraph does not have any application to this case, but to the other case."

Steed & Wimberly and Guerry & Hall, for plaintiff.

Dessau, Bartlett & Ellis and Hill, Harris & Birch, for defendant.

FISH, J. 1. Complaint was made, in the motion for a new trial, of the admission of testimony upon the trial to sustain the credibility of one of the witnesses for the defendant, whose character the plaintiff contended had not been assailed. Several witnesses testified, in behalf of the plaintiff, that the death of Andrew Wright, for whose homicide the suit was brought, was caused by McCrary, a conductor on defendant's train, wilfully knocking him off the train with a piece of coal, and causing him to fall between the cars and to be run over and killed. McCrary, who was introduced as a witness by the defendant, testified, in substance, that he did not knock Wright off the train, nor throw any coal at him, nor use any violence whatever towards him. The court then permitted the defendant to prove by a number of witnesses that they knew McCrary, knew his general character, that it was good, and from that character they would believe him on his oath. This testimony was admitted over plaintiff's objection that it was irrelevant and illegal, in that no effort had been made in any manner to impeach McCrary. We think the court erred in allowing this evidence in support of McCrary's character for veracity to go before the jury.

While it is true that his testimony was in direct conflict with that of several witnesses who testified for the plaintiff, yet it is well settled that a mere conflict between the testimony of witnesses for the respective parties to an action will not authorize the admission of evidence as to the credibility of such witnesses. *Hamilton* v. *Conyers*, 28 *Ga.* 276; *Travelers Insurance Co.* v. *Sheppard*, 85 *Ga.* 751 (5); *Miller* v. *Western & Atlantic Railroad Co.*, 93 *Ga.* 480; *Bell* v. *State*, 100 *Ga.* 78; 5 Am. & Eng. Enc. L. (2d ed.) 854. It was argued by counsel for the defendant, that the allegations of the petition and the testimony of plaintiff's witnesses put the character of McCrary in issue, by charging him with the commission of a serious crime, viz. with wilfully and wantonly knocking Wright off defendant's train, thereby causing his death; and that as the plaintiff contended that McCrary represented the defendant in what he did, the defendant should be permitted to establish the general character of its agent for truth and veracity. To sustain this contention counsel cite Civil Code, § 5159; *McNabb* v. *Lockhart & Thomas*, 18 *Ga.* 495; *Planters & Miners Bank* v. *Neel*, 74 *Ga.* 576; *DuBose* v. *DuBose*, 75 *Ga.* 753; *Falkner* v. *Behr*, Ib. 671; *Columbus & Rome Ry.* v. *Christian*, 97 *Ga.* 56; *German American Mutual Life Asso.* v. *Farley*, 102 *Ga.* 720. We do not think these authorities support the contention of defendant's counsel. Upon examination it will be seen that they are simply to the effect that when the nature of the action involves a particular trait of character of a party thereto, evidence in reference to such trait is admissible. This is in accord with the general rule that evidence of character, when admissible, should be so restricted as to have some reference or analogy to the trait involved. 5 Am. & Eng. Enc. L. (2d ed.) 856, and cases cited. If in the present case the witness McCrary be treated as the defendant, then the evidence to support his general character for truth and veracity was not admissible, because that particular trait of his character was not involved in the assault which the plaintiff contended he made upon Wright.

2. One of the grounds of the motion was, that the court erred in giving in charge, at the request of defendant's counsel, § 5163 of the Civil Code which declares that, "Where a party

has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted." The error assigned is that there was no evidence to justify this charge. To this ground the court attached the following explanatory note: "With reference to the statement of facts as to the 19th ground, my recollection of the contention of counsel is as follows: Plaintiff's declaration alleged that Andrew Wright in company with John Reese and others got upon the coal-car in the train of defendant company on the occasion when Andrew Wright was killed, and on the trial of the case Reese was sworn as a witness for the plaintiff and was put upon the stand by plaintiff's counsel with the apparent intention of introducing him as a witness, and after consultation among counsel for the plaintiff they stated that they would withdraw the witness and not introduce his testimony. Counsel for defendant contended in their argument before the jury that the evidence for the plaintiff showed, and the petition alleged, that Reese was with Andrew Wright at the time, and that if he knew facts that were materially beneficial to the plaintiff's case that they should have introduced him as a witness, and that not having introduced him as a witness authorized an inference that his testimony would not benefit the plaintiff's case. Counsel for defendant read from the code the principle invoked, and requested a charge upon the same, which was given. The court did not undertake, as will be seen by reference to the charge, to apply this principle of law to either side, simply giving it as a principle of law, that the jury might consider the same in connection with the testimony in the case." We do not think the facts of the case authorized the charge. There is nothing in the record showing that Reese, or any of the other persons who got upon the defendant's train with Wright, was under the power or control of the plaintiff, nor does it affirmatively appear that Reese, or any of them, knew the facts of the homicide. The plaintiff introduced several witnesses who

testified that they saw McCrary, the conductor, knock Wright off the train with a piece of coal, thereby causing him to fall beneath the cars and to be run over and killed. Therefore it could not be said that the plaintiff had more certain and satisfactory evidence in his power to sustain his contention, and yet relied on that which was of a weaker and inferior nature, even if Reese and all of such persons had been under his power or control, and even if they all might have been where they could have seen what occurred when Wright was killed.

3. The motion further complains that "the court erred in refusing to permit plaintiff to prove by the witness Jesse Moore, that the deceased, Andrew Wright, had frequently gotten on defendant's freight-trains similar to this, about this same place and about the same part of the train, headed in the same direction, to go down to Bullards, or to the bridge, or other neighboring point, to fish or hunt; and that the conductors instead of putting him off had permitted it, and accepted pay either in money or fish, sometimes one, sometimes the other; that the defendant through its conductors permitted him to get between the cars and accepted for his transportation sometimes money and sometimes fish." In this connection counsel for plaintiff stated that he "could not bring the testimony to any train on which conductor McCrary was in charge." Plaintiff's contentions were, in substance, (1) that McCrary, who was in charge of the defendant's freight-train as conductor, wilfully and without any provocation knocked Wright off such train with a piece of coal, causing him to fall beneath the cars and be killed; (2) that said conductor wrongfully and violently compelled Wright to leave such train while it was in rapid motion, by reason of which he fell between the cars and lost his life. The testimony of plaintiff's witnesses, if credible, sustained the former contention. The evidence for the defendant was to the effect that McCrary did not knock Wright off the train, nor use any violence whatever towards him, that McCrary did not even know that Wright was on the train. If either of the plaintiff's contentions were true, the defendant would be liable, whether Wright was rightfully or wrongfully on the train. If there as a passenger, the conductor was bound to exercise extraordinary dili-

gence to protect his life and person; if he was a trespasser, he was entitled to protection against wanton and unnecessary violence on the part of the conductor in expelling him from the train. Civil Code, § 2266; *Higgins* v. *Southern Ry. Co.*, 98 *Ga.* 751; *Savannah, Fla. & W. Ry. Co.* v. *Godkin*, 104 *Ga.* 655. As the only purpose of this testimony of Moore was to show that Wright was on the train rightfully, we think the court did not err in rejecting it as irrelevant.

4. Extracts from the judge's charge are set forth in grounds 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25 and 26 of the motion for a new trial, and excepted to generally, without specifying, in any instance, in what the error consists. It is urged by counsel for the defendant in error that such assignments of error are too general to be considered. While § 5530 of the Civil Code provides that, "When a party desires to review the judgment of the court in granting or refusing a new trial, the plaintiff in error shall specifically set out the errors complained of," etc., yet, in view of the settled practice and rulings of this court, general assignments of error like those just referred to must invoke at least a limited consideration. In *Hunley* v. *State*, 104 *Ga.* 755, it was held that, "Where the charge complained of appears on its face to be free from error, and no specific assignment of error is made on it, this court can not consider it. If the error is apparent, the charge may be considered on a general complaint that it is error." In other words, a general assignment of error upon an extract from the judge's charge will be considered for the purpose of ascertaining whether such extract states a sound legal proposition; if it does, that is an end of the matter. This court will not then inquire and determine whether the law embraced in the charge complained of be adjusted to the issues and proof in the case, for the simple reason that no such point is made. The truth is, that a complaint that a certain specified charge was erroneous practically amounts, pure technicality aside, to a specific complaint that the trial judge misstated the law. Therefore, such complaint should be treated as a sufficiently explicit assignment of error to raise the question whether or not the proposition complained of is, or is not, considered in the abstract, correct, thus

placing the burden upon this court of ascertaining what the law upon the subject is, and of then comparing the same with the charge of which complaint is made. If the charge correctly stated the law, then no error has been shown by the complaining party under his general exception, and every presumption will be in favor of the judgment. If the excerpt from the charge of the court, generally excepted to, be wholly erroneous, then, as all error is presumably prejudicial, this court will further consider the matter by examining the record for the purpose of ascertaining if the party complaining has really been injured by the erroneous charge. What was said in the cases of Lamar v. State, 72 Ga. 205, Wilson v. Garrick, Ib. 663, Higgins v. Cherokee R. R., 73 Ga. 149, Erskine v. Duffy, 76 Ga. 603, and Georgia R. R. v. Olds, 77 Ga. 673, and perhaps in other cases, as to the requirement of specific assignments of error, is not really in conflict with what we have herein stated. An examination of those cases will show that while a strict rule as to assignments of error was announced, yet in each case the charges which were generally excepted to were correct expositions of the law, and it further appears that the court examined them, and in several instances expressly stated that they were not erroneous. The spirit, at least, of all that is laid down in these cases is, we think, in complete harmony with what is now ruled. We have carefully considered all of the extracts quoted from the charge, which were excepted to generally in the above-indicated grounds of the motion, and find no error in them, save those complained of in the 13th and 15th grounds, and both of those, while in some slight respects erroneous, contain distinct propositions of sound law. According to numerous decisions of this court, the rule is, that a general exception to an extract from the charge makes the simple question whether the whole extract is erroneous; and unless the whole of it be illegal, the exception must specifically point out the illegal part, otherwise it can not be ascertained whether the party is complaining of the part that is sound or of that which is erroneous. For these reasons, the 13th and 15th grounds can not be further considered.

Judgment reversed. All the Justices concurring.