## GREESON v. BAILEY. THOMAS v. BAILEY.

No. 6491. JANUARY 16, 1929.

*M. B. Eubanks,* for plaintiffs. *Slaton & Hopkins,* for defendant.

GILBERT, J. A proper construction of the question will greatly simplify our task. The question presents three facts upon which the answer depends. (1) A servant drives his master's automobile from one place to another. In doing this he is "acting within the scope of his employment." (2) While driving from place to place he permits another person to ride with him in the car. In such permission he "exceeds his authority." (3) While acting as stated he willfully and wantonly injures the person riding with him. In such circumstances is the master liable to the injured party? It is the practice of this court to look no further than the question propounded, to ascertain the facts. Construing the facts recited in the question most strongly against the person suing, it must be assumed that the injured party was riding in the car without the knowledge and against the consent of the master. Indeed it must be inferred that he obtained the ride as the result of his own seeking. The law of master and servant applies. Every person is liable for the torts committed by his servant by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary. Civil Code (1910), § 4413; *Fielder* v. *Davison,* 139 *Ga.* 509 (77 S. E. 618). If injury is done by the servant *not in the prosecution or scope of his business,* the master is not liable. It follows from the principles stated that three facts must coexist to constitute liability. (1) The relation of master and servant. (2) The servant must be acting *both* in the prosecution and within the scope of his business. (3) Injury. The question propounded settles for us (1) and (3). It only remains to discuss (2). The principles of law applicable to this case are not the same as those in ordinary cases of personal injury by servants and employees of railroad companies. The liability of railroad companies has been extended by the Civil Code (1910), § 2780. This section applies to street-railways. *Cordray* v. *Sav. &c. Ry. Co.,* 117 *Ga.* 464 (2) (43 S. E. 755). Even in the case of a railroad company a sharp line of distinction is drawn where the employee, engaged in his duties, exceeds his authority. *Georgia R. &c. Co.* v. *Wood,* 94 *Ga.* 124 (21 S. E. 288, 47 Am. St. R. 146) ; *Lynch* v. *Florida &c. R. Co.,* 113 *Ga.* 1105 (39 S. E. 411, 54 L. R. A. 810). In *Waller* v. *Southern Ice &c. Co.,* 144 *Ga.* 695 (87 S. E. 888), this court dealt with a case like the present one. The driver of an automobile truck permitted a nurse and a child

to ride upon the running-board, and the child fell under the wheels of the truck and was killed. This court held that the master was not liable, upon the ground that the action of the driver in giving permission to the child to mount the running-board and in allowing the nurse and child to ride was entirely without the scope of his duties as the employee of the owner of the truck. See the authorities there cited. That case was followed and approved in *Murphey* v. *New South Brewing &c. Co.*, 145 *Ga.* 561 (89 S. E. 704). Both cases were full-bench decisions.

"The driver of a motor-vehicle, in the absence of express or implied authority from the owner to permit third persons to ride therein, is ordinarily held to be acting outside the scope of his employment in permitting them to do so. Hence, so far as the operator of a motor-truck is knowingly carrying a child in a position of danger, he will be regarded as acting beyond the scope of his employment." 42 C. J. 1104, § 865. See also *Atlantic Ref. Co.* v. *Sheffield,* 162 *Ga.* 656 (134 S. E. 761). "If a servant steps aside from his master's business, for however short a time, to do an act entirely disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not liable." *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470, 472 (65 S. E. 322). In a well-considered opinion by Judge Russell the principle just quoted is elaborately argued and supported by decisions of this court and courts of other jurisdictions. A street-railway company was sued for damages arising out of personal injuries. In the opinion it was said: "What, then, is the test by which it should be determined whether the act of the servant was within the scope of his employment? Judge Thompson, in his Commentaries on the Law of Negligence, volume 1, § 526, says: ' The test by which to determine whether the master is liable for the tortious act of his servant is not whether it was done during the existence of the employment, that is to say, during the time covered by the employment, but whether it was done in the prosecution of the master's business. Upon this subject it has been said: "In determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was *at the time* engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is

not responsible. If the servant was, at the time when the injury was inflicted, acting for himself and as his own master *pro tempore,* the master is not liable. If the servant steps aside from his master's business, *for however short a time,* to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities."'" See other authorities cited, 6 *Ga. App.* 477. The servant acted not in the prosecution of and not within the scope of his business, and the master is not liable. Where the servant acts not in the prosecution of his master's business or within the scope of such business, the master can not be held liable, no matter how wanton or willful the conduct of the servant. In other words, to constitute liability on the part of the master, it must be shown that the act was within the prosecution or scope of the master's business, no matter what the degree of negligence. Whether the master was negligent in employing an undependable and careless servant is not here involved. We must assume from the question that there was no allegation to that effect. It would violate both reason and justice to hold that the absent owner of an automobile, having no knowledge that his servant would, without his consent or in disobedience to his orders, permit another to ride in his automobile, not operated for hire, may be liable for injury to such third person. Certainly the injured party was in a better position to save himself from harm than was the absent master. When he entered the automobile he must have been aware that he was inducing the servant to exceed his authority and to act contrary to the wishes of the master, and also that under the known automobile usage he was, as to the master, assuming the incident risks.

It would extend this discussion to unpardonable length to discuss the numerous decisions and texts which are not binding on this court. *All the Justices concur, except*

HILL, J., dissenting. The Court of Appeals, in connection with the certified question, directed attention to *DeKalb Supply Co.* v. *Moore,* 162 *Ga.* 758 (134 S. E. 620) ; *McIver* v. *Florida Central & Peninsular R. Co.,* 110 *Ga.* 223 (36 S. E. 775, 65 L. R. A. 437) ; *Smith* v. *Savannah, Florida & Western Ry. Co.,* 100 *Ga.* 96 (27 S. E. 725) ; *Higgins* v. *Southern Ry. Co.,* 98 *Ga.* 751 (25 S. E. 837) ; *Madden* v. *Mitchell Automobile Co.,* 21 *Ga. App.* 108 (94

S. E. 92); Lafferty *v.* Armour, 272 Pa. 588 (116 Atl. 515); Perrin *v.* Glassport Lumber Co., 276 Pa. 8 (119 Atl. 719); Christie *v.* Mitchell, 93 W. Va. 200 (116 S. E. 715) 39 C. J. 1304, § 1502. In answering the question, of course we are to do so solely on the question propounded, and not with reference to any given state of facts other than those stated in the question. I have examined each of the cases cited by the Court of Appeals, and numerous other cases bearing upon the question; and after consideration, I find it not without difficulty to answer. It will be observed that the question involves the statement that "a servant" is "acting within the scope of his employment in driving an automobile for his master from one place to another," etc. So the very first sentence of the question involves a consideration as to when a servant is acting within the scope of his employment. In *Fielder* v. *Davison,* 139 *Ga.* 509, 511 (supra), Mr. Justice Lumpkin discussed at some length certain phases of the present question. Speaking for a majority of the court he said: "If the owner of an automobile is sued for damages on account of an injury caused by it while driven by his chauffeur, the rules of law touching master and servant and the liability of the former for the act of the latter are to be applied. . . Omitting the fellow-servant doctrine, the general rule is that a master is liable for the tort of his servant, whether negligent or voluntary, if done by his command or in the prosecution and scope of his business. Civil Code, § 4413. The expressions, ' in the scope of his business,' or ' in the scope of his employment,' or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's business, that is, if the servant is at the time engaged in serving the master, the latter will be liable. *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 550, 553, et seq. (58 S. E. 38, 10 L. R. A. 1176). But for a tort committed by the servant entirely disconnected from the service or business of the master, the latter is not responsible under the doctrine of respondeat superior, although it may occur during the general term of the servant's employment. . . It is very generally held, unless there is a statutory provision to the contrary, that if a chauffeur or other servant takes the automobile of his master, without the knowledge or con-

sent of the latter and contrary to his directions, and, while riding in it for his own purposes and not in connection with the business of the master, negligently injures a passer, the master will not be liable. And this is also held where the owner loans his automobile to the chauffeur at a time when not engaged in his service, and for the private use of the chauffeur, disconnected from the master's business. *McIntire* v. *Hartfelder-Garbutt Co.*, 9 *Ga. App.* 327 (71 S. E. 492) ; Steffen *v.* McNaughton, 142 Wis. 49 (124 N. W. 1016, 26 L. R. A. (N. S.) 382, 19 Ann. Cas. 1227) ; Slater *v.* Advance Thresher Co., 97 Minn. 305 (107 N. W. 133, 5 L. R. A. (N. S.) 598) ; Babbitt on Law of Motor Vehicles, § 570; and cases cited above. The tenth section of the act of 1910 (Acts 1910, p. 93) preserves any right of action for damages, but does not declare a new right."

See also Berry on Automobiles (3d ed.) §§ 1032, 1035, 1038, where it is said that between the owner of an automobile and his chauffeur while the chauffeur is engaged in the owner's business the relation of master and servant exists, and the rules of law applicable to that relation apply; that it is a well-settled rule of law that the master is liable for the acts of his servant done in the course of his employment and in furtherance of the master's business; that it is well settled that the master is not liable for the acts of his servant done outside the scope of his employment; and that "beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged, can not be regarded as the act of the master." And see Huddy on Automobiles (4th ed.) 367, §§ 268, 269. The question propounded, after stating a case where a servant is acting within the scope of his employment in driving an automobile for his master from one place to another, also adds a statement, that the servant "exceeds his authority by permitting another person to ride with him in the automobile." It is stated that the servant is acting within the scope of his employment and yet "exceeds his authority" in so doing. Whether or not a servant acts within the scope of his employment necessarily depends upon the facts of each particular case. In Christie *v.* Mitchell, supra, it was held that the general rule is that a master owes no other duty to one who is a trespasser, or a mere licensee or invitee of his servant, except

not to wantonly and wilfully injure him, and that a "master is not liable for personal injuries sustained by one invited by his servant to ride on his truck, without actual or ostensible authority to do so, when not acting within the scope of his duties. But notwithstanding this general rule, if such servant, after so inviting one to ride with him and while operating such truck within the general scope of his authority, does so in a wanton, wilful, and reckless manner and thereby injures his invitee, the master is liable for the injuries thus inflicted."

In 39 C. J. § 1502, it is stated: "It is very generally held that a servant has no implied authority to invite or permit a third person to ride on a horse or vehicle in his charge, and if, in so doing, the invitee sustains injuries through the negligence of the servant, the master will not be liable, as the servant is not acting within the scope of his authority; and especially is this true where the servant is acting in disobedience of express orders not to invite any one to ride on the vehicle. This principle has been applied notwithstanding the invitee was an infant, even though, it has been held, the invitee was an infant of tender years, and for that reason released from any charge of contributory negligence. In these circumstances, the master owes no duty to the invitee who is a trespasser, except to see that he is not wilfully or wantonly injured. Nevertheless, notwithstanding the invitee is a trespasser, the master will be liable for injuries inflicted on him by the wilful, wanton, or reckless conduct of the servant." In 39 C. J. § 1487, it is said: "The rule laid down by earlier decisions both in England and in many of the United States is that the master is not liable for damages resulting from the wilful, wanton, or malicious acts of his servant, unless done by express direction, or with his assent, although the act was committed within the line of the servant's duties. But now, in almost all jurisdictions, it is well settled that the master is liable for the wilful and malicious acts of the servant done within the course of his employment and within its scope, although the acts were not expressly ratified by the master or authorized by him. Such acts are imputable to the master under the doctrine of respondeat superior, and in accordance with general principles heretofore discussed the master will be liable although the acts were in disobedience of express orders or directions given by him, or although the particular act complained of may

have been in excess of the servant's authority, and regardless of the motive or intention of the servant. It has been held, however, that if the nature of the act is such as to render it doubtful·if the act comes within the scope of the servant's employment, the intention with which the act is done may be considered in determining its character." And in § 1488 it is declared: "In accordance with general principles heretofore considered, the master is not liable for the wilful and malicious acts of the servant committed outside of the scope of his employment. And this is so even where the employment furnishes the opportunity for the wrong doing."

Our own court has passed upon questions somewhat analogous to the question presented by the Court of Appeals. Thus, in *Savannah, Florida & Western Ry. Co.* v. *Godkin*, 104 *Ga.* 655 (30 S. E. 378, 69 Am. St. R. 187), it was held: "The wanton, wilful, and forcible expulsion of a person from a freight-train in rapid motion by an employee of a railroad company engaged in its service on such train, from which personal injuries result to the party thus expelled, will give him a right of action against the company, whether he be on such train lawfully or unlawfully." In *Higgins* v. *So. Ry. Co.*, 98 *Ga.* 751 (supra), it was held: "A railroad conductor represents the company by which he is employed, in determining what persons are entitled to ride upon trains committed to his care; and his act in expelling from a train a person not entitled to ride thereon as a passenger, being one performed by him in the line of his duty, is in law the act of the company. . . Even a trespasser who intrudes upon a freight-train under a fraudulent arrangement with an inferior employee, who has no authority in the premises, is entitled to protection against violence on the part of the conductor, wantonly and unnecessarily exercised in expelling him from the train; and for injuries to his person resulting from such violence the railroad company is liable." In *Brunswick & Western R. Co.* v. *Bostwick*, 100 *Ga.* 96 (27 S. E. 725), it was held: "A passenger injured by being unlawfully and forcibly thrown from a moving train by an employee of the railroad company in its service on that train, is entitled to maintain an action against the company, although it be not within the line of this employee's business to eject from such train persons not rightfully thereon." In *Payne* v. *Allen*, 155 *Ga.* 54 (116 S. E. 640), the foregoing rule was recognized by Mr. Justice Atkinson delivering the opinion, where it was

said: "If the plaintiff's son was a passenger on the train, the defendant would owe him the duty of extraordinary diligence to protect his person and life. Civil Code (1910), § 2714. If he was a trespasser on the train, the company would not owe him the duty of extraordinary diligence *(Purvis* v. *Atlanta & Northern Ry. Co.,* 136 *Ga.* 852 (3) (72 S. E. 343)), though he would be entitled to protection against wilful, wanton, and unnecessary violence by the employees in expelling him from the train. *Smith* v. *Savannah, Florida & Western Ry. Co.,* 100 *Ga.* 96 (27 S. E. 725); *Anderson* v. *So. Ry. Co.,* 107 *Ga.* 500 (33 S. E. 644)." And see *Madden* v. *Mitchell Automobile Co.,* 21 *Ga. App.* 108 (supra).

In view of the decisions of this court in which I think the questions decided are analogous to the question now being considered, I am of the opinion that the question as presented by the Court of Appeals should be answered in the affirmative. Of course, whether the servant was acting within the scope of his employment in a given case, and whether he exceeded his authority by permitting another person to ride with him in the automobile, and whether the injury received by the licensee or invitee was the result of the *"wanton* and *wilful"* act of the servant in operating the automobile, are questions of fact to be determined by a jury in any given case. The case of *Waller* v. *Southern Ice &c. Co.,* 144 *Ga.* 695 (supra), relied upon by the majority of the court as controlling, is distinguishable from the question at hand. In that case there was no question of the injury having been inflicted by the chauffeur of the master *wantonly* and *wilfully,* as in the instant case.