32888.   HICKS *v.* SWIFT & CO.

DECIDED MARCH 9, 1950.

*Patterson & Story, Frank G. Wilson, Alfred D. Fears,* for plaintiff.

*Matthews, Long & Hendrix,* for defendant.

SUTTON, C. J. This case being here on exceptions to the direction of a verdict, it becomes necessary to see what the evidence shows.

It was stipulated by counsel: "That Jesse L. Barnes contracted with Mr. R. T. Smith whereby Mr. Smith was to assume control as to the time, manner and supervision over the two Negroes and a truck that Mr. Barnes furnished to Mr. Smith with the complete authority and power delegated to Mr. R. T. Smith to hire and fire said Junior Carter and Sam Pye. Said contract was for the purpose of unloading fertilizer on the siding at Flovilla, Georgia, to be hauled to a warehouse of Mr. Smith; said fertilizer being owned by Swift & Company.

R. T. Smith, called as a witness for the plaintiff for the purpose of cross-examination, testified to the effect that he resided at Flovilla and that he was a fertilizer and cottonseed dealer there; that Swift & Company shipped fertilizer to him by freight and truck from Atlanta to Flovilla, and when the fertilizer was shipped by freight, he had it hauled from the railroad siding to his warehouse and paid for hauling the fertilizer from the boxcar to his warehouse. He identified a contract between himself and Swift & Company, by the terms of which he was authorized to sell fertilizer for Swift & Company, and testified that he sold Swift & Company fertilizer in Butts County, for cash or on cash terms; that a car of fertilizer was consigned to him and he got Barnes' truck to haul it and was paying 50¢ per ton for hauling the fertilizer from the boxcar to his warehouse; that he did not know that the plaintiff, Roy Lee Hicks, was there. This witness·said: "I didn't know it at all. I didn't see him that day until after this happened. I came up just after the accident happened, and that's when I found out that he was the little boy that was hurt. I don't know anything about the accident."

Junior Carter testified that he had been working at a sawmill for J. L. Barnes and that, on Friday morning, Mr. Barnes told him to go to Flovilla and help Sam Pye unload a car of fertilizer for R. T. Smith, and when they got down there Mr. Smith was

there and told them to load the fertilizer on the truck and what to do with it. Mr. Barnes told them to haul the fertilizer for Mr. Smith. The witness testified: "I went back the next day on Saturday about noon. It was about 11:30 when I first saw two little white boys come to the warehouse and get on the truck. . . After we finished unloading, I got on the truck, and I was going up to the church to turn around; and they stepped up on the truck as I went to pull off. . . After he fell off I stopped the truck and got out and picked him up; and about that time I met Mr. Smith coming down the road. Mr. Smith took the little boy and looked at him to see if he was hurt. I saw Mr. Smith on the Saturday morning that I went back to finish unloading. He was standing down there between the car boxes. He told us to go ahead and unload and after we got through to come by his office and tell him. . . When I got ready to leave the warehouse to turn the truck around I knew those little boys were back on the truck. They were standing pretty close to the cab."

Roy Lee Hicks testified: "I was in Flovilla, Georgia, on Saturday, November 20, 1948, and there were two Negroes out there that day hauling fertilizer from a boxcar on the siding there to a warehouse. . . I got up in the truck out there while they were hauling the fertilizer. The Negroes were stacking the fertilizer in high stacks on the truck. I rode the cab back to the warehouse. After we got back to the warehouse I got up on top of those stacks of fertilizer and pushed those stacks of fertilizer off the truck and into the warehouse. . . I got up on the truck after the fertilizer had been taken from the truck. They went to turn around up there at the church. The Negro throwed me off the truck when he went up there and turned around. He was going up there to turn around, and when he did he throwed on his brakes, and I fell on my head. He slammed on the brakes and that was what caused me to fall off. He stopped suddenly. He didn't give me any warning that he was going to stop. I was standing close to the cab, holding to the door. . . No one told me to get off the truck."

J. W. Hicks, the plaintiff's father, and two physicians, testified as to the nature and extent of the plaintiff's injuries.

There is no evidence to show that R. T. Smith had any knowledge of the presence of the plaintiff on the truck or at his ware-

house, nor does it appear that he, either directly or indirectly, authorized him or anyone else, other than Junior Carter and Sam Pye, to ride on or to be permitted to ride on said truck. Briefly, the evidence shows that Swift & Company shipped a car of fertilizer to R. T. Smith at Flovilla. Smith was obligated to unload the fertilizer from the railroad car and to move it to his warehouse. He engaged the truck from J. L. Barnes, together with two Negro servants, and directed them to unload the fertilizer from the car and to haul it and place it in his warehouse.

. It was ruled in *Waller* v. *Southern Ice & Coal Co.*, 144 *Ga.* 695 (87 S. E. 888): "Where the driver of an automobile truck which belonged to the defendant company, and which was used solely for the purpose of carrying ice, while driving the truck, apparently in the ordinary discharge of his duties, upon the request of a boy having in charge as nurse a child of tender years, permitted the nurse and the child in his charge to get upon the running-board of the truck, which was about twelve inches from the ground and about twelve inches broad, and ride thereon, such action upon the part of the driver in giving permission to the children to mount the running-board and in allowing them to ride was entirely without the scope of his duties as an employee of the owner of the truck. And where the child of tender years, in dismounting from the running-board, fell under the wheels of the truck while it was in motion, and was killed, the company was not liable in damages to the mother of the child, who brought suit against the company, alleging that the child contributed to her support and that she was dependent upon him; and the court did not err in granting a nonsuit at the conclusion of the plaintiff's testimony."

It was held in *Braselton* v. *Brazell*, 49 *Ga. App.* 269 (2, 3) (175 S. E. 254): " 'The driver of a motor-vehicle, in the absence of express or implied authority from the owner to permit third persons to ride therein, is ordinarily held to be acting outside the scope of his employment in permitting them to do so. Hence, so far as the operator of a motor-truck is knowingly carrying a child in a position of danger, he will be regarded as acting beyond the scope of his employment,' unless authority therefor from the owner is shown [citing cases]. . . The court properly

sustained the general demurrer to the petition of the plaintiff, a child ten years of age, suing by next friend, which set forth merely that the truck was being driven by an agent of the defendant owner in delivering coal in a driveway adjoining her residence, that the truck was attractive to her, that she boarded the same, and with the agent's permission assisted him in unloading the coal, remained on the truck when it drove away, and that she was thereafter injured because of the agent's negligence in allowing her to board and remain on the truck, and in suddenly increasing its speed so as to cause it to jerk violently forward, make her lose her balance, and fall to the pavement; but which failed to indicate that the defendant master either expressly or impliedly authorized or permitted the plaintiff to board or ride on the truck, or that the agent in so permitting her acted in the prosecution or scope of the business for which the master employed him."

A driver employed by the owner of an automobile who invites another as his guest to ride in the automobile without the knowledge, authority, or consent of the owner, or who permits one to so ride, is acting outside the scope of his employment, and the owner is not liable on account of such person's death caused by the negligence of the driver. *Carpenter* v. *Lyons*, 78 *Ga. App.* 214 (2) (50 S. E. 2d, 850); *Monroe Motor Express* v. *Jackson*, 74 *Ga. App.* 148 (5) (38 S. E. 2d, 863); *Beard* v. *Oliver*, 52 *Ga. App.* 229 (2) (182 S. E. 921); *Greeson* v. *Bailey*, 167 *Ga.* 638 (146 S. E. 490).

Where, under the facts of this case, there could have been no legal recovery against R. T. Smith, there certainly could be none against Swift & Company. Under the evidence and the law applicable thereto, a verdict was demanded for the defendant, Swift & Company, and the trial court did not err in directing such verdict.

*Judgment affirmed. Felton and Worrill, JJ., concur.*