Emmett M. BRIDGER, Individually, et al., Plaintiffs-Appellants,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellee.

No. 72-2856.

United States Court of Appeals,
Fifth Circuit.

June 27, 1973.

Rehearing Denied July 18, 1973.

Doye E. Green, Buckner F. Melton, Macon, Ga., for plaintiffs-appellants.

Edward J. Harrell, Cubbedge Snow, Jr., Macon, Ga., for defendant-appellee.

Before TUTTLE, THORNBERRY and RONEY, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Bridger brought this suit in state court to recover damages for injuries to himself and the death of his wife, caused when the car occupied by appellant and his wife was struck from the rear by a car driven by Billy Farris Teasley, an employee of appellee International Business Machines Corporation (IBM). Alleging diversity of citizenship, IBM removed the case to the court below. Both sides moved for summary judgment; the trial court granted IBM's motion, holding that the facts established as a matter of law that Teasley was not acting within the scope of his employment with IBM at the time of the accident. Upon a careful review of the record, we have concluded that the issue of scope of employment should have been left to the jury. Accordingly, we reverse the judgment below and remand for trial.

Teasley was a "customer service engineer" or serviceman for IBM, performing repairs and service on IBM products (typewriters, dictation equipment, and the like) on the owners' premises. He was required to be at the day's first job by 8:30 a. m. and was permitted to cease work in time to return to IBM's Macon, Georgia, office by 5:15 p. m., although he was not required actually to return to Macon at the end of the day. For any work done outside these hours, Teasley was paid overtime. Although all customer service engineers were subject to call seven days a week, twenty-four hours a day, to perform emergency service work, Teasley had not received an emergency call for at least two years prior to the date of the accident, and the equipment he was trained to repair was not normally serviced after regular hours. Moreover, it is unclear from the record whether IBM could relay an emergency call to Teasley in the field; Teasley's su-

pervisor testified only that *"now* we are actually using radios to contact them" [emphasis added].

Teasley drove his own car when making service calls, and was paid $2.70 per day for maintenance, whether he drove his car or not. In addition, IBM paid him mileage for the distance between his home in Warner Robins, Georgia, to the first job of each day, the distance he drove between job sites during the day, and the distance from the last job site back to Warner Robins, regardless of whether he actually returned to Warner Robins after finishing his last job.

On the day of the accident in question, after spending about two hours at IBM's Macon office, Teasley performed service work at Robins Air Force Base in Warner Robins for almost two hours. Thereafter he drove to the Agriculture Stabilization and Conservation Service office in Perry, Georgia, and did repair work there for approximately four hours. It is undisputed that this was his last service call for the day and that he received no emergency calls that night. He left Perry at roughly 5:00 p. m. and took the easternmost of four alternate routes to Warner Robins, located roughly twelve miles northeast of Perry. At the town of Bonaire, Georgia, he drove east to the Flamingo Club, where he drank beer until ten o'clock that night. He then resumed his trip toward Warner Robins. Shortly after reaching the highway to Warner Robins, his car struck appellant's car from the rear, severely injuring Mr. Bridger and killing his wife. Teasley claimed and received mileage for the trip from Perry to Warner Robins.

■ In Georgia, an employer's liability for the torts of his employee is governed by statute:

Every person shall be liable for torts committed by his wife, his child, or his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary.

Ga.Code § 105–108. Undeniably, Teasley was performing a purely personal mission while he was at the Flamingo Club for almost five hours drinking beer, and IBM cannot be liable for any tort he committed while engaged in that mission. Greeson v. Bailey, 1929, 167 Ga. 638, 146 S.E. 490. Under Georgia law, however, the employer's liability for his employee's torts is suspended only during the employee's "deviation" from his duties; upon the employee's resumption of his work, the employer's liability re-attaches. *E. g.* Atlanta Furniture Co. v. Walker, 1935, 51 Ga.App. 781, 181 S.E. 498. Thus, the issue here is whether the trial court properly held that the evidence conclusively established that Teasley had not resumed the discharge of his duties at the time of the accident.

In Southern Gas Corp. v. Cowan, 1954, 89 Ga.App. 810, 81 S.E.2d 488, the Georgia Court of Appeals held that facts substantially similar to those of the case at bar authorized a jury finding that an employee-driver was acting within the scope of his employment at the time of an automobile accident. Bowman, a salesman and serviceman for Southern Gas, collided with the plaintiff while driving home in a company-owned car roughly two hours after his last call of the day. The company paid operating expenses for the car, which Bowman could keep at home for his personal use subject to emergency business calls. Relying primarily on the fact that Bowman kept the car for his personal use subject to emergency calls, the court of appeals held that this evidence warranted a jury finding that Bowman was acting within the scope of his employment while driving home in the company car:

To the extent that he was subject to call at all hours and had the automobile there to use in case he was so called, the keeping of the automobile at his home was in furtherance of his employment duties . . . Bowman's driving of the company's automobile from the place of his last call to his home where he would keep it subject to using it on company business in the event he was called out by the company was within the scope of his employment.

81 S.E.2d at 490. The court expressly reserved the question whether Bowman would have been acting within the course of his employment while performing personal errands after reaching his home.

The holding in *Cowan* is somewhat ambiguous. Bowman was arguably benefiting his employer *both* by keeping the car subject to use on emergency business *and* by storing his employer's car at his home overnight. Whether either of these possible benefits was enough to impose vicarious liability on an employer, or whether both of them were necessary, was unclear until the *Cowan* court decided Price v. Star Service and Petroleum Corp., 1969, 119 Ga.App. 171, 166 S.E. 2d 593. There, an employee of Star Service had been involved in a collision while driving home from a Sunday church service in a company car. The opinion contains no mention of whether the employee was on call at the time of the accident. It was argued that the employee was benefiting his employer simply by driving the company car home for storage; but the court squarely rejected that argument, holding that company ownership of the car, standing alone, is an insufficient basis of employer liability. That holding makes it evident that the fact that Bowman was on call was the deciding factor in imposing liability on the employer in *Cowan*. It follows that, if Teasley was subject to call after resuming his trip home to Warner Robins, he was, no less than was Bowman, acting within the scope of his employment.

■ The trial court distinguished *Cowan*, however, on the ground that Teasley was not subject to emergency call. Noting that Teasley had not received an emergency call in at least two years, and pointing to IBM's doubtful ability to contact Teasley in the event of an emergency, the trial court held that the requirement of availability in emergencies was "never enforced and . . . not expected to be enforced" and was "at best a theoretical requirement." In our view, the question whether Teasley was on call was properly a question for the jury in the instant case. Merely because no emergency calls had been *made* is no evidence that IBM would not "enforce" the requirement that servicemen answer such calls if they were made. Nor is it as clear to us as it was to the trial court that IBM had no way of contacting Teasley in the event an emergency call was made. As noted above, Teasley's supervisor testified on deposition that "*now* we are actually using radios to contact them" [emphasis added]. While it is reasonable to infer from this statement that at some point in the past IBM did not use radios to contact its servicemen, the statement says nothing about whether IBM had any means of contacting its servicemen before the installation of the radios. · In brief, the question whether Teasley was in fact subject to emergency call—which, as we have seen above, is a critical factor in determining his employer's liability—was a disputed issue of fact that was inappropriate for the decision by the trial court on motions for summary judgment. Accordingly, the judgment below is reversed and remanded for further proceedings consistent with this opinion.