## 31235. MONROE MOTOR EXPRESS *v.* JACKSON.

DECIDED JUNE 26, 1946. REHEARING DENIED JULY 25, 1946.

*James W. Arnold,* for plaintiff in error.

*A. M. Kelly, Roberts & Roberts, Erwin & Nix,* contra.

SUTTON, P. J. (After stating the foregoing facts.) ■ The contention of the defendant Motor Express, that the original petition did not contain enough to amend by, and that the court erred in allowing the plaintiff to amend it, is not well taken. "A petition showing a plaintiff and· a defendant, and setting out sufficient to indicate and specify some particular fact or transaction as a cause of action, shall be enough to amend by." Code, § 81-1302. The cause of action declared on in the original petition was the death of the plaintiff's husband, which the petition alleged was the proximate result of specified acts of gross negligence of the Motor Express in the operation of one of its trucks at the time and place alleged. The right to amend is liberal, and the original petition contained enough to amend by. *Moore* v. *Bryan,* 52 *Ga. App.* 272 (183 S. E. 117). Also see, *Ellison* v. *Ga. R. Co.,* 87 *Ga.* 691 (13 S. E. 809); *Columbia Mining Co.* v. *Wellmaker,* 118 *Ga.* 606 (45 S. E. 455); *Johnson Lumber Co.* v. *Akers Lumber Co.,* 48 *Ga. App.* 329, 330 (172 S. E. 667); *Interstate Life & Accident Co.* v. *Lewis,* 43 *Ga. App.* 775 (160 S. E. 115); *United States Fidelity & Guaranty Co.* v. *Koehler,* 36 *Ga. App.* 396 (137 S. E. 85). The

judge did not err in allowing the amendment for any reason assigned.

■ The Motor Express contends that the petition as amended failed to set out a cause of action, and that the court erred in overruling its general demurrer to the amended petition. The amended petition alleged that the plaintiff's husband was riding upon one of the trucks of the Motor Express with its consent; that the driver of the truck had authority from the Motor Express to permit her husband to ride therein, and that in permitting him to ride therein the driver was acting within the scope of and in the prosecution of his employment; that her husband died from injuries sustained as the proximate result of specified acts of gross negligence of the driver in the operation of said truck in the usual course of the company's business. Under the allegations of the amended petition, we can not say as a matter of law that the plaintiff's husband was not the guest of the Motor Express and that his death was not the proximate result of the gross negligence of such company, acting through its servant and employee the driver of said truck, but these were matters for the jury. *Rowe* v. *Camp,* 45 *Ga. App.* 794 (165 S. E. 894), and citations. Also see *Petway* v. *McLeod,* 47 *Ga. App.* 647 (171 S. E. 225); *Moore* v. *Bryan,* supra; *Atlantic Ice & Coal Corp.* v. *Newlin,* 56 *Ga. App.* 428 (192 S. E. 915), and citations. The judge did not err in overruling the general demurrer to the petition as amended.

■ Any errors in allowing the amendment of June 12, 1945, and in overruling the defendant's grounds of demurrer thereto, were cured when the plaintiff struck this amendment in its entirety on June 29, 1945.

■ The exception taken by the Motor Express to the judgment overruling its grounds of special demurrer to the amendment allowed June 29, 1945, and to the petition as amended shows no harmful error, and the judge did not err in overruling the special demurrer.

■ The Motor Express contends that the evidence demanded a finding that the driver of its truck, in permitting the plaintiff's husband to ride therein, violated the instructions given him, and that it was not liable to the plaintiff for her husband's death. As a general rule, a master is not subject to liability for the conduct of a servant towards a person harmed as the result of accepting

from the servant an invitation, without the knowledge or consent of the master or against the instructions of the master, to ride in one of the master's trucks or automobiles, although the conduct which immediately causes the harm is the negligent operation of the vehicle which is within the scope of the servant's employment. *Beard* v. *Oliver,* 52 *Ga. App.* 229 (182 S. E. 921). Also see *Waller* v. *Southern Ice & Coal Co.,* 144 *Ga.* 695 (87 S. E. 888); *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490); *Tate* v. *Atlantic Ice & Coal Corp.,* 25 *Ga. App.* 797 (104 S. E. 913); *Morris* v. *Fruit Co.,* 32 *Ga. App.* 788 (124 S. E. 807).

In the present case, it is uncontroverted that Akridge and the other drivers for the Motor Express were instructed to obey rule 60 of the Georgia Public Service Commission, and to permit no one to ride upon the trucks operated by them who was not an employee, relief driver or helper or official of the Motor Express. It is not contended that there was an express waiver of this rule, or that Akridge had express authority of the Motor Express to permit plaintiff's husband to ride in said truck at the time he sustained the injuries which resulted in his death; but the plaintiff contends that the evidence authorized the jury to find that there had been an implied waiver of the rule and an implied consent and authority on the part of the Motor Express for the driver to allow her husband to ride in said vehicle on the occasion when he was injured. In an effort to show this implied waiver and authority, the plaintiff introduced the evidence of several witnesses.

Jesse Cooper testified in part: "As to whether Cap Jackson did ever ride on the truck of the Monroe Motor Express Company, he did. I did also. There was never any objection to our riding; if there was any, I didn't know it. There was no sign on the truck about 'No riders.' I have ridden on the truck only once. I went to the warehouse in Atlanta. I did not pay anything for the ride. Rufus Akridge was driving the truck. I saw Mr. Perry at the warehouse. There was no objection to my riding on the truck. I rode back, and did not pay anything to ride back. When I went up there to the warehouse of the Monroe Motor Express, I helped them around there. Mr. Perry asked me to help them. I helped load and unload the truck. He paid me fifty cents for it. Mr. John Perry was then in general charge of the Monroe Motor Express. I did see Cap Jackson riding on that

truck when Rufus was driving. The time I went, I got on the truck, when I went up there, in the yard at the warehouse. . . When I went to Atlanta . . I didn't go up there to work, I went for the ride. Nothing was said about my working before I left here. It happened I did a little work. . . I was not paid anything more besides fifty cents."

McLeroy Malcom testified in part: "I rode about twice on a truck of the Monroe Motor Express to Atlanta. . . Rufus Akridge was driving the truck. When I got up there, I went to the warehouse where they loaded the stuff. I have seen Mr. John Perry there, the manager. No objection was made to my riding up there. I rode back. . . [Rufus Akridge] got me to go with him on the first trip; to ride with him, he said go with him, and I helped him unload the stuff. . . I helped unload at the terminal. I rode back with him. . . We helped unload another truck and helped load the truck for Monroe. . . Mr. John Perry paid me a dollar for it. That was the first time I went up there. The second time I went up there, I told Rufus I wanted to go . . as I had a watch up there. . . I helped unload that time, I did help unload when we got to Atlanta. . . Nothing was paid me for that."

John Cooper testified in part: "I rode three times on the Monroe Motor Express truck to Atlanta. [Rufus Akridge] was driving the truck when I went. . . I went to the warehouse. I know Mr. Perry here. I saw him. He didn't make any objection to my riding. I came back riding on the truck. One of those times I helped do work up there. I helped load the truck. A half a dollar was paid me. [Rufus Akridge] gave it to me, and he said Mr. Perry gave it to him. . . The second time I rode . . I did not do any unloading on the way. I did do unloading at the warehouse. I helped unload. I was not payed anything for it. The third time . . while in Atlanta, I got out at the laundry. I got off at the warehouse. I have never ridden up there without helping load or unload."

Fluke Catlin testified in part: "I have ridden on this truck of the Monroe Motor Express. I couldn't tell how many times I have been riding on that truck. . . I have been to Atlanta several·times . . but haven't been to the warehouse but once on it. . . The time I went to the warehouse, I helped unload some of

the stuff. . . I did not get any pay for that. I didn't ask any, I just rode with him."

Roy Jackson testified in part: "I rode up to Atlanta on the Monroe Motor Express truck. Mr. Bill Mitchell was driving. I went up there just for the ride. I had never been to Atlanta before. . . That was last summer. I got on the truck down at the bus wagon service station. I got off in Atlanta where he loaded up. I came back with Mr. Mitchell too. I helped load a few tires on the truck . . in Atlanta . . I helped unload. . . I did not do any unloading between here and Atlanta coming back, I went to sleep. Mr. Perry gave me a little something for it: fifteen cents. . . The truck driver did not hire me to work for him on the way up there. I didn't ask him. Nothing was mentioned to me about working before I left here. That was my first trip. I stayed in the warehouse."

For the defendants, John O. Perry testified in substance, in part: That he was president of Monroe Motor Express and had general charge of all the operations of the company; that there had been a shortage of help from time to time and it had been necessary quite often to employ temporary hands for temporary jobs; that had sometimes included the employment of hands to load and unload on particular trips; the drivers would sometimes be authorized to pick up a hand after they left, if they could find one; those extra hands were sometimes paid in Atlanta, sometimes at Monroe, and the drivers themselves in some instances paid the hand out of their own pockets and were reimbursed from the Atlanta or Monroe office, where the cashiers had authority to reimburse them for such payments; when these extra hands were employed to go along with the truck and help load and unload, they rode on the truck like any other employee; they never, with his knowledge and consent, rode on the truck except when employed, permanently or temporarily; that he never permitted any hitchhiker or any person other than an employee of the company to ride on one of its trucks; that he instructed the drivers not to allow hitch-hikers to ride; that all of the drivers were informed of the rule against permitting hitch-hikers to ride; that allowing people to ride in the trucks was prohibited, and all of the drivers, including Akridge, were so informed; that the white drivers had authority to hire extra hands when needed, but Akridge did not

have this authority, unless he was directed to do so by him or by Mr. Miller; that he remembered when Jesse Cooper came to the warehouse, and the witness paid him fifty cents, which was to buy his dinner, as that was the usual practice, and the witness "expected" that he was paid the balance when he got back to Monroe; that rule 60 of the Public Service Commission was read to Akridge, as he could not read.

Bill Mitchell testified in substance, in part: That the Motor Express never permitted the riding of hitch-hikers on its trucks, and that Rufus Akridge was instructed to that effect; that no truck driven by Akridge, or by any other driver of the Motor Express, left Monroe with his knowledge or consent with anyone riding thereon who was not a permanent or temporary employee of the Motor Express; that Akridge was not allowed to pick up anyone, unless he was told to do so by him or by Mr. Perry; that he remembered Roy Jackson; that he hired him for the trip he made to Atlanta, but did not remember what he paid him.

The plaintiff introduced in evidence the indemnity insurance policy carried by the Motor Express. The defendants introduced in evidence rule 60 of the Public Service Commission, which rule provides: "Motor carriers certificated to transport freight only are hereby expressly forbidden to transport passengers on freight carrying vehicles, either free or for compensation. The transportation of persons, other than the driver, shall be limited to employees of the carrier, relief drivers or helpers or officials of the company." There was other evidence for both the plaintiff and the defendants, but it is not necessary to set it out.

Under the evidence in this case, every person who rode upon the trucks of the Motor Express, and whose presence there was known to its president and manager, was either an employee of the company, or one who rode upon the truck and who actually performed services for the Motor Express of a character that was usually paid for by the company. While some of these persons testified that they were not paid by the company for their services, it does not appear that the Motor Express, through its president and manager, had any knowledge that such persons were not paid for their services, or that some of them ever rode on the defendant's trucks. We do not think that the evidence in this case is sufficient to show an implied waiver by the company of its rule prohibiting anyone

other than an employee, relief driver or helper or official of the company to ride upon its trucks, an implied consent and authority on the part of the Motor Express for the driver to permit the plaintiff's husband to ride on the truck on the occasion when he was injured. Waiver is a voluntary relinquishment of some known right, benefit, or advantage, which, except for such waiver, the party otherwise would have enjoyed. Acquiescence may sometimes amount to waiver, because a legal intention may in some cases be presumed from conduct, but there is always the requisite of intent, either express or implied; and when the only proof of that intention rests in what a party does or forbears to do, his acts or omissions to act, relied on, should be so manifestly consistent with and indicative of an intention to voluntarily relinquish a then-known particular right or benefit, that no other reasonable explanation of his conduct is possible. *Stapleton* v. *Dismukes,* 43 *Ga. App.* 611 (159 S. E. 768).

The evidence as to the conduct of Perry, the president and manager of the Motor Express, which is relied on by the plaintiff to show a waiver of the rule forbidding any person other than an employee, relief driver or helper or official of the company from riding on its trucks, and to show that the driver had implied or apparent authority from the Motor Express to permit the plaintiff's husband to ride on said truck, is not sufficient as a matter of law to support the finding of the jury in favor of the plaintiff. There was no evidence that Perry ever acquiesced in any person riding upon one of the trucks of the company who was not an employee of the company, or who was not performing services of a nature that would indicate to Perry that he was an employee of the company engaged in loading or unloading the trucks of the company; nor was it shown by evidence that such persons were not carried on the books of the Mótor Express as employees and their compensation paid to Akridge, or one of the other drivers, who failed to turn the same over to them.

While the evidence authorized a finding that the plaintiff's husband died as the proximate result of the gross negligence and unlawful acts of Akridge in the operation of one of the Monroe Motor Express trucks, it did not authorize a finding that Akridge, in permitting the plaintiff's husband to ride thereon, was acting with the consent or knowledge of the Motor Express, or that he had

implied authority of the Motor Express to permit the plaintiff's husband to ride in said truck. It follows, therefore, that the verdict for the plaintiff is without evidence to support it, and that the trial judge erred in overruling the general grounds of the defendant's motion for a new trial.

The alleged errors in the charge are not likely to occur again on a subsequent trial of this case, and the exceptions taken thereto will not here be considered.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the full court consider any case in which one of the Judges of a division may dissent, and there being a dissent on motion for rehearing, this case was considered and decided by the court as a whole, on a motion for rehearing, and after consideration of the motion the former judgment entered in this case is concurred in by a majority of the six Judges of this court, the motion for rehearing is denied, and the judgment of the trial court is reversed.

*Judgment reversed. Broyles, C. J., Sutton, P. J., MacIntyre, Felton and Gardner, JJ., concur. Parker, J., dissents.*

PARKER, J., dissenting. I think that the evidence was sufficient to authorize the finding by the jury that the deceased rode the truck of the defendant motor company with its implied knowledge and consent. Five different witnesses testified to riding. trucks of the defendant from their homes to the defendant's warehouse in Atlanta and back to their homes, some of them having ridden, as stated, several different times, and four of these witnesses saw the president and manager of the defendant company, who knew that they were riding and made no objection. On several occasions the witnesses helped load or unload the truck on which they rode, and sometimes, but not always, they were paid some small amount, from 15 cents in one instance to one dollar in another, by the president of the company or the driver of the truck. But these small payments were made voluntarily, and not on any hiring contracts, and such payments did not make the witnesses bona fide employees of the defendant. It appears that the witnesses rode on the trucks without paying anything and without any previous contract of employment having been made with the defendant, and in some instances, as they expressed it, just "for the ride." The fact that they may have helped on several occa-

sions in loading or unloading the trucks did not, in my opinion, make them employees or paid passengers on the trucks. They could not have been passengers, either free or for compensation, under rule 60 of the Public Service Commission. The evidence showed that several other parties, *including the deceased,* had also ridden the trucks of the defendant under similar conditions, and that the deceased was riding in the accustomed manner when he received the injuries from which he died.

There was some evidence supporting the verdict. It should be construed in a light most favorable to the prevailing party, because every presumption and inference is in favor of the verdict. It has the approval of the trial judge, and in the absence of some error of law this court is not authorized to set the verdict aside and order a new trial. I respectfully dissent from the majority ruling.