James T. WILLIAMS, Plaintiff,

v.

Fred P. WRIGHT, Jr., Individually and as liquidating trustee of Wright Pest Control Co. of South Carolina, Inc., Defendants.

No. 188–058.

United States District Court,
S.D. Georgia,
Augusta Division.

Feb. 7, 1992.

Richard E. Miley, Augusta, Ga., Thomas P. Murphy, North Augusta, S.C., for plaintiff.

J. Arthur Davison, Augusta, Ga., for defendants.

## MEMORANDUM

NANGLE, Senior District Judge.

Plaintiff brings this action seeking to recover retirement benefits under the Employment Retirement Income Security Act ("ERISA"), and under state contract law. The case was tried to the Court sitting without a jury. Having considered the pleadings, the testimony of the witnesses, the exhibits before the Court and the stipulations of the parties, and being fully advised in the premises, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff James T. Williams is a resident and citizen of the City of Augusta, Richmond County, Georgia; his date of birth is October 30, 1914. He has been married to Virginia Crenshaw Williams for 45 years. Her date of birth is February 28, 1922.

2. Defendant Fred P. Wright Jr. ("Wright") is a resident and citizen of Aiken County, South Carolina.

3. Defendant Wright Pest Control Co. of South Carolina, Inc. ("WPCC") was a South Carolina corporation with its last principal place of business being located in Aiken County, South Carolina.

4. Defendant Wright became president of WPCC in 1978. After his father's death in December, 1985, Defendant Wright was WPCC's sole shareholder.

5. Plaintiff was an employee of WPCC or its predecessor proprietorship from 1947 up until October 1981. At no time from 1947 until 1981 was plaintiff either the subject of any pension plan or promised any retirement benefits in relation to his employment at WPCC. Plaintiff made no contribution to any employment-related retirement fund during this period.

6. On October 23, 1981, Defendant Wright presented to plaintiff a letter outlining a retirement plan wherein Defendant Wright represented that WPCC would provide to plaintiff monthly income of $500, health insurance, life insurance, an automobile, automobile expenses, and the payment of plaintiff's country club dues and expenses. Defendant Wright personally prepared and typed the October letter, and the terms and provisions of the letter were not negotiated but were merely presented to plaintiff.

7. A paragraph inserted into the October letter provides:

As this program is as we agreed, but in fact may not fill all needs as anticipated, future revisions are to be expected, but no changes will be considered until a sufficient amount of time has passed. April 1, 1982 will be the earliest date that revisions will be considered.

8. After receipt of the October letter, plaintiff was essentially retired from WPCC, although he remained loyal and acted as a consultant to WPCC.

9. Between January 1, 1981 and September 7, 1984, plaintiff received all payments provided under the October letter.

10. On September 7, 1984, Defendant Wright wrote a memorandum to plaintiff, wherein Defendant Wright made the following changes in the benefits being paid to plaintiff:

(a) Augusta Country Club expenses other than dues would no longer be paid;

(b) Telephone expenses would be limited to local line charges only;

(c) Automobile gasoline expenditures were limited to $50.00 per month, the automobile was not to be taken out of town, and maintenance work was required to be approved and done by only one of two mechanics;

(d) Petty cash payments for meals or other similar expenses were eliminated.

11. When this memorandum was presented to plaintiff he made no objections to the reductions in his benefits.

12. Early in 1985, Defendant Wright sold the assets of WPCC to Terminex Service, but retained the right to operate Sears Pest Control concession and related assets. The sales agreement provided for a total consideration of $499,000, $250,000 of which consideration was paid at the closing of the sale. The sales agreement also provided for two promissory notes, one in the amount of $149,250 and another in the amount of $49,750. In addition, defendant gave covenants not to compete under which Terminex Service agreed to pay defendant the sum of $1,730.77 for 156 months. Defendant Wright continues to receive these payments.

13. On September 1, 1985, Defendant Wright sent a letter to plaintiff advising him that all benefits would be terminated at the end of 1985. At that time plaintiff received full ownership of the company car which he had been using and was forgiven a $1906.63 debt he owed WPCC. Plaintiff made no objections to the termination of benefits.

14. WPCC was dissolved in early 1986 at which time Defendant Wright, being the sole shareholder, received assets worth approximately $83,000 and continued to operate the Sears Pest Control concession. On February 16, 1987, Defendant Wright acknowledged the payment in full of the $49,750 note and received a check in the amount of $149,250 for the second note which check he then deposited into a checking account in his name.

15. The first time Defendant Wright received any kind of objection to or disagreement from plaintiff concerning the complete termination of benefits was sometime after February 25, 1988, when defendant received a letter from plaintiff's counsel.

*Conclusions of Law*

The Court has subject matter jurisdiction over this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(f), and also by virtue of the diversity of citizenship between the parties and the amount in dispute exceeding $50,000, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332. Venue is proper

in this district because the claim arose here.

On appeal from the granting of a summary judgment motion by defendant in this case, the Eleventh Circuit Court of Appeals concluded that the provisions of the October letter providing for monthly payments of $500 establish an employee pension benefit plan under 29 U.S.C. § 1002(2); and that the provisions relating to payment of premiums on the WPCC life and health insurance plans created an employee welfare benefit plan governed by ERISA under 29 U.S.C. § 1002(1). *Williams v. Wright*, 927 F.2d 1540 (11th Cir.1991). The Court of Appeals did not go beyond answering the threshold question of the existence of an ERISA plan and left to the District Court the application of ERISA's substantive provisions to the particular facts in this case. This Court will now address the applicability of ERISA's substantive provisions to the facts now before it.

Pension Benefits

The dispute in this case centers on the language contained in the October letter which this Court referred to above in paragraph 7 of its statement of facts. Defendant interprets this language to give him the unilateral right to revise, including terminate, the agreement at any time after April 1, 1982.

■ The pension benefits are covered by all substantive ERISA provisions, including provisions for participation and vesting. 29 U.S.C. § 1051 *et seq.* Plaintiff contends that he has a vested, nonforfeitable interest in the pension benefits. "Vesting of pension rights occurs when all eligibility requirements of a voluntary noncontributory pension plan have been met, and the retiree may not therefore be divested of his rights." *Turner v. Loc. U. No. 302, Intern. Broth. Of Team.,* 604 F.2d 1219 (9th Cir.1979). Mr. Williams' pension rights became vested in this case at the time he started receiving the $500 per month retirement benefits. The question now becomes whether WPCC reserved a right to revise or terminate the benefits, and, if so, whether that termination was lawful.

■ As stated above, defendant contends that he reserved a unilateral right to revise or terminate the benefits. The obvious problem with the ERISA covered plan in this case is that it does not specifically relate if the plan can be terminated, or under what circumstances, or by whom. The Court in *Terones v. Pacific States Steel Corp.,* 526 F.Supp. 1350 (N.D.Ca.1981), stated that the general purpose of ERISA is to prevent the loss or diminution of pension benefits by plan termination. *Id.* at 1354. The Court went on to state that, "It has been generally recognized, both pre- and post-ERISA, that public policy favors construing pension plans in favor of the employee and to avoid forfeiture of benefits." *Id.* at 1354. The Court in *Terones,* held that any terms that may adversely affect benefits are to be spelled out. *Id.* at 1353. The Court concluded that:

> Collectively bargained for pension plan that sets forth responsibility of parties in event of termination, but did not contain any provision for manner in which plan could be terminated or as to who would have authority to terminate, could not be unilaterally terminated by employer when it shut down its plant.

*Id.* at 1354–1355.

The disputed paragraph, or the entire October letter, in this case does not contain any provisions for the manner in which the plan could be terminated or who would have the authority to terminate it. Although the plan in the case now before us is factually different in that the plan at issue was not collectively bargained for, the ERISA statute, case law, and public policy strongly favor construing these provisions in favor of the employee. Plaintiff's rights to receive the pension benefits vested at the time he started receiving them, and WPCC did not reserve the right to unilaterally terminate those benefits. "Even where the employer has specifically reserved the right to change or discontinue a plan, courts have refused to permit termination where vested rights would be cut off or diminished." *Terones v. Pacific States Steel Corp.,* 526 F.Supp. 1350, 1355

(N.D.Ca.1981), *citing Hoefel v. Atlas Tack Corp.*, 581 F.2d 1 (1st Cir.1978). Vested pension rights may also not be altered without the consent of the retiree. *Turner,* at P. 1224–25.

Defendant argues that ERISA does not prohibit an employer from reserving the right to withdraw or change the amount of benefits. Defendant is correct that ERISA does not prohibit a revision or termination of pension benefits. However, in order to do so, the employer must specifically set out in the plan the manner of revision or termination and who has the authority to do so. Defendant did not do this in this case. Also, even if WPCC would have specifically reserved this right, it can only exercise the right prior to the time in which the benefits become vested in the employee.

■ Defendant also makes the argument that plaintiff acquiesced in all of the changes made in the initial agreement by not objecting to them at the time they were made. The Court in *Monroe Motor Express v. Jackson,* 74 Ga.App. 148, 38 S.E.2d 863 (1946), defined acquiescence as:

Acquiescence may sometimes amount to waiver, because a legal intention may in some cases be presumed from conduct, but there is always the requisite of intent, either express or implied; and when the only proof of that intention rests in what a party does or forbears to do, his acts or omissions to act relied on should be so manifestly consistent with and indicative of an intention to voluntarily relinquish a then known particular right or benefit, that no other reasonable explanation of his conduct is possible.

*Id.* 38 S.E.2d at 869. Since both parties testified at trial that neither one understood before February, 1988, that ERISA applied to the October letter and created pension rights for plaintiff, defendants' acquiescence defense fails because plaintiff "did not voluntarily relinquish a then known right" at the time he failed to object to the changes defendant was making to his pension benefits.

**Welfare Benefits**

■ Defendant makes the same argument with respect to the welfare benefits as he does with respect to the pension benefits; that WPCC reserved the right to revoke. Welfare benefit plans are statutorily excluded from ERISA's participating and vesting provisions. 29 U.S.C. § 1051 *et seq.* However, employers may contractually bind themselves to provide lifetime welfare benefits by the provisions of the documents establishing the ERISA plan. *See Anderson v. Alpha Portland Industries, Inc.,* 647 F.Supp. 1109, 1125–26 (E.D.Mo.1986), *aff'd* 836 F.2d 1512 (8th Cir. 1988), *cert. denied,* 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989); *In re White Farm Equipment Co.,* 788 F.2d 1186 (6th Cir.1986); *Alday v. Container Corp.,* 906 F.2d 660 (11th Cir.1990). If the life and health insurance benefits are unambiguously limited to the term of the relevant agreement, then the benefits are not vested. The issue becomes one of contract interpretation, and, if necessary, a consideration of the relevant extrinsic evidence and the parties' course of dealing. *Anderson* at p. 1126. The plaintiff has the burden "to show that the parties intended retirees' benefits would be vested ..." *Food & Commercial Workers Local 150A v. Dubuque Packing Co.,* 756 F.2d 66, 70 (8th Cir.1985).

■ Plaintiff contends that WPCC's promise to provide medical and life insurance benefits to plaintiff "until death or when you have no use for them" constituted a binding contact. Defendants counter that the language in the October letter referring to revisions reserved in WPCC the right to revoke. Defendants also contend that the language of the October letter provides that WPCC would pay premiums "on the company's group medical insurance plan, and the maximum available term life insurance available through the plan for your age group." This language, defendants urge, shows that the agreement clearly contemplated the continuing existence of the company's plans.

The language of the October letter reflected the intent of the parties to limit

health and life insurance coverage for the plaintiff to the company's plans, so long as they were in existence. There is no evidence that the parties contemplated the continuation of the welfare benefits beyond the existence of the company's plans. Therefore, the welfare benefits did not vest by contract and the plaintiff is not entitled to receive those benefits past the date of termination.

State Law Contract Claim

Plaintiff also seeks to recover non-ERISA benefits including automobile expenses and country club dues. The Eleventh Circuit Court of Appeals held that these non-ERISA benefits are not preempted by ERISA and, therefore, state law is applicable to these benefits. *Williams v. Wright*, 927 F.2d 1540 (11th Cir.1991). The Court will apply Georgia contract law to the non-ERISA benefits to determine whether plaintiff is entitled to them.

■ Defendants make two arguments with respect to the non-ERISA benefits. Defendants' first argument is that the October letter must fail as a contract because it was no more than a gratuitous promise unsupported by consideration. Defendants cite the Georgia case of *Webb v. Warren Co.*, 113 Ga.App. 850, 149 S.E.2d 867 (1966), to support this argument. In *Webb*, the employer essentially forced the employee to retire but awarded a retirement income "in consideration of his past relationship with the company." *Id.* 149 S.E.2d at 869. The court held that the retirement pay was a mere gratuity, reasoning that the employer could have simply discharged the employee without incurring liability. In the case before us, however, consideration exists in the form of an implied promise by the plaintiff to be available as a consultant and to remain loyal to WPCC. *See Klag v. Home Insurance Co.*, 116 Ga.App. 678, 158 S.E.2d 444 (1967). These facts were not present in the *Webb* case.

■ The contract between the parties in this case to provide automobile expenses and country club dues will fail if the duration of the contract is too indefinite. "To be enforceable a contract must be sufficiently definite as to subject matter and time." *King v. State Farm Mutual Automobile Insurance Company*, 117 Ga.App. 192, 160 S.E.2d 230, 232 (1968). The words used in the October letter, "until death or when you have no use for them", contemplate a time in the future that is too uncertain to meet the requirement set out above. However, if the plaintiff detrimentally relied on defendants' promise, then the contract is enforceable despite the indefiniteness of duration. *Pepsi Cola Bottling Co. v. First National Bank*, 248 Ga. 114, 281 S.E.2d 579 (1981). Plaintiff argues that he detrimentally relied on defendants' promise of lifetime benefits which induced him to retire. This Court finds that it is reasonable to expect the plaintiff to rely on defendants' promise to pay him a pension for the remainder of his life, but finds that it would be unreasonable for plaintiff to rely to his detriment on defendants' promise to pay country club dues and automobile expenses indefinitely.

■ Defendants' second argument with respect to the non-ERISA benefits is that the revisions paragraph of the October letter referred to above is ambiguous and the Court must consider extrinsic evidence of the parties intent. When the terms of a contract are ambiguous the Court should determine the intent of the parties:

"In order to ascertain intention of parties, language of agreement should be considered in light of attendant and surrounding circumstances. The court should place itself as nearly as possible in situation of parties in seeking true meaning and correct application of language of contract."

*Aetna Life Ins. Co. v. Padgett*, 49 Ga.App. 666, 176 S.E. 702 (1934). In looking at the surrounding circumstances of the agreement by WPCC to pay plaintiff's country club dues and automobile expenses the only reasonable conclusion is that the intent of the parties was that the payments were not to continue indefinitely, but were subject to revision or termination by WPCC. The October letter was drafted and typed by Defendant Wright personally and then presented to plaintiff. It is illogical to suggest that defendant would draft an

agreement to obligate his company and himself personally to pay these non-ERISA benefits to plaintiff no matter what circumstances might develop in the future.

For the above stated reasons the contract to pay Mr. Williams' country club dues and automobile expenses is unenforceable, and plaintiff is not entitled to recover for any amounts associated with the termination of those benefits.

Remedies

■ The first question that must be answered before we can determine the proper remedy to compensate Mr. Williams for the loss of his pension benefits, is whether Defendant Wright is personally liable. Defendant Wright is a plan fiduciary under 29 U.S.C. § 1002(21)(A) in that he exercised control over the management of the plan. *See Successor Trust Committee v. First State Bank,* 735 F.Supp. 708, 715 (W.D.Tex.1990). ERISA makes a plan fiduciary liable for losses to the plan arising out of his breach of fiduciary duties. 29 U.S.C. § 1109. Defendant Wright is personally liable as a plan fiduciary, together with WPCC, for failure to create the required trust and its failure to fund the trust. Defendants argue that 29 U.S.C. § 1002(21)(A) contemplates a fiduciary exercising authority over a management of a plan with assets. Defendants cite no authority for this proposition, and from a reading of case law it is apparent that all that is required for purposes of ERISA is that "a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Successor Trust Committee* at p. 715, *citing, Sommers Drug Stores Company Employees Profit Sharing Trust v. Corrigan Enterprises Inc.,* 793 F.2d 1456, 1459–60 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987). There is no question in this case that Defendant Wright exercised authority or control over the pension benefits.

■ Plaintiff, James T. Williams, is entitled to recover past-due benefits, together with prejudgment interest. *See Short v. Cent. States, S.E. & S.W. Areas Pen. Fund,* 729 F.2d 567, 575–76 (8th Cir.1984);

and *Foltz v. U.S. News & World Report, Inc.,* 613 F.Supp. 634, 648–49 (D.C.D.C. 1985). The authorization of the district court to award prejudgment interest in ERISA cases is premised on the fact that the plans in question received a windfall from the use of the money, while the employees suffered a concomitant loss. *Foltz* at 648. There is no question that in this case the defendant has received a windfall from the use of the money that rightfully belongs to plaintiff.

■ The Court must now decide what interest rate to use and the appropriate amount of damages. "In general, district courts have discretion in deciding what interest rate is most appropriate in awarding prejudgment interest." *Cefali v. Buffalo Brass Co. Inc.,* 748 F.Supp. 1011, 1025 (W.D.N.Y.1990). Some courts in ERISA cases have applied the rate for post judgment interest under 28 U.S.C. § 1961, which is tied to the interest rate on Treasury bills. *See Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir. 1981), *cert. denied* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). Other courts have held that either a statutory or a market rate may be used, depending on the circumstances. *See Foltz* (interest calculated on basis of statutory rate, or under unusual circumstances, prevailing market rate); *Blanton v. Anzalone,* 760 F.2d 989 (9th Cir.1985) (court should use formula in 28 U.S.C. § 1961(a) unless it finds on substantial evidence that different rate is appropriate); *EEOC v. Wooster Brush Co. Employees Relief Ass'n,* 727 F.2d 566, 579 (6th Cir.1984) (district courts may, but are not compelled to apply post judgment interest rate in 28 U.S.C. § 1961(a)). In the only Eleventh Circuit case the Court could find dealing with this issue, the Court of Appeals upheld the district court's determination of an 18% interest rate which was based on the rate that a hospital had been charging the plaintiff for unpaid medical bills that should have been covered by his employer. *National Companies Health P. v. St. Joseph's Hosp.,* 929 F.2d 1558 (11th Cir.1991). Plaintiff's counsel suggests that the Court use an interest rate of 7%, but

does not give the Court any guidance as to where it came up with this figure. A Georgia statute provides for an interest rate of 12% to be applied to post judgment damage awards. O.C.G.A. § 7–4–12. This statute was amended in 1980 raising the interest rate from 7% to the current 12% The Court speculates that plaintiff's counsel may be basing the interest rate on this Georgia statute prior to its amendment. The Court will use an interest rate of 12% based on O.C.G.A. § 7–4–12, in computing the total amount of damages. Plaintiff's losses, based on this interest rate are as follows:

| Year | Principal | Interest |
|------|-----------|----------|
| 1986 | $ 6,000 | $ 3,670 |
| 1987 | 6,000 | 2,940 |
| 1988 | 6,000 | 2,220 |
| 1989 | 6,000 | 1,500 |
| 1990 | 6,000 | 780 |
| 1991 | 6,000 | 60 |
| 1992 | 500 | 0 |
| Total | 36,500 + | 11,170 = $47,670 |

■ Plaintiff contends that as to his future benefits, the Court should require defendants to establish and fund a trust fund with a sufficient amount to pay plaintiff's benefits for the remainder of his life or alternatively to fund an annuity which would be sufficient to pay plaintiff's benefits. Plaintiff cites the case of *Hollingshead v. Burford Equipment Co.*, 747 F.Supp. 1421 (M.D.Ala.1990), to support his argument that defendants should be required to set up a trust fund to pay future benefits. The facts in *Hollingshead* are very similar to the instant case. In *Hollingshead*, the employer, Burford, Inc. was established in 1934 and remained in operation until 1987 when it sold its assets to Thompson Tractor & Equipment Company, Inc. *Id.* at 1424. The company was thereafter dissolved. During its operation, Burford, Inc. paid retirement benefits to its employees out of the general assets of the company. They never had a formal plan. *Id.* After the company sold its assets it stopped paying benefits to those employees who had reached retirement age. Former employees brought suit to recover lost benefits. *Id.* In *Hollingshead*, the Court re-

quired the employer to set up a trust because of the employer's "total lack of compliance with ERISA". *Id.* at 1442. The court said that, "To allow Burford (the employer) to limit its liability in this case by inadequately funding a trust to provide the benefits legitimately expected by its former employees would frustrate the purpose of ERISA." *Id.* at 1444.

Defendants Wright and WPCC completely failed to comply with the requirements of ERISA, although the Court, as set forth hereinafter, does not believe they acted in bad faith, defendants will be compelled to establish a trust that is adequately funded to satisfy the plaintiff's expectations in his vested pension benefits. The minimum funding standard as set forth in 29 U.S.C. § 1085 is an appropriate formula to utilize in calculating the amount necessary to fund the trust in accordance with this Court's instructions.

■ Plaintiff also contends that ERISA mandates that all pension plans provide for a qualified joint and survivor annuity for married participants. Prior to August 23, 1984, 29 U.S.C. § 1055(a) stated, "If a pension plan provides for the payment of benefits in the form of an annuity, such plan shall provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity." The ERISA section further required the participant to be given a reasonable period of time in which to elect the qualified joint and survivor annuity or the single life annuity. A "qualified joint and survivor annuity" must be "the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. § 1055(g)(3) (prior to August 23, 1984).

It was not until August 23, 1984, to be effective January 1, 1985, that congress amended 29 U.S.C. § 1055 to require pension plans to offer joint and survivor annuities unless otherwise elected by the participant and his spouse. Retirement Equity Act of 1984, P.L. 98–397, Title I, Section

103(a), 98 Stat. 1429. The amended act does not apply to plaintiff because it did not take effect until January 1, 1985. The plaintiff in this case is not entitled to a joint and survivor annuity because one was not offered to him by his employer. Defendants' payments to plaintiff of his pension benefits will cease upon the death of Plaintiff James T. Williams.

 Finally, plaintiff asks for an award of attorney's fees based on defendants' bad faith. Section 502(g) of ERISA, 29 U.S.C. § 1132(g), governs the awarding of attorney's fees. It provides in pertinent part that: "[i]n any action under this subchapter ... by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Eleventh Circuit has adopted five factors that should govern a district court's determination of whether to award attorney's fees at the trial stage. *Nachwalter v. Christie*, 805 F.2d 956, 961 (11th Cir.1986). These five factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Id.* at 961–62.

The Eleventh Circuit Court of Appeals denied plaintiff's request for attorney's fees on appeal:

> The Factors articulated in *Nachwalter v. Christie*, 805 F.2d 956, 961–62 (11th Cir. 1986), suggest that fees on appeal are not warranted. We see no indication that appellees' positions on appeal were taken in bad faith, or that deterrence of similar conduct would be appropriate. Williams' position seeks to benefit only himself, not other beneficiaries. Finally, the appeal involved close questions of law.

*Williams v. Wright*, 927 F.2d 1540, 1551, n. 25 (11th Cir.1991). Many of the issues on appeal are before this Court, and this Court also sees no indication that appellees' positions were taken in bad faith. The other findings by the Court of Appeals as cited above are equally applicable here. This Court finds that an award of attorney's fees is not warranted on the facts before it based on the factors as set out above.

Conclusion

On the basis of the findings of fact and conclusions of law set forth in this memorandum, the Court this day enters judgment in favor of plaintiff and against defendant in the amount of $47,670 including interest.