United States Court of Appeals
Fifth Circuit

**F I L E D**

August 22, 2006

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 05-30906
Summary Calendar

---

DAISY ESTELLE COBB,
WIDOW OF OLIVER RAY GIBBS,

Plaintiff-Appellant,

VERSUS

CENTRAL STATES, SOUTHWEST AND SOUTHEAST AREAS PENSION FUND,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
m 2:04-CV-1421

---

Before SMITH, GARZA, and PRADO,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Daisy Cobb appeals an adverse benefit determination by Central States, Southwest and Southeast Areas Pension Plan ("Central States"). We vacate the judgment and remand with instruction to dismiss for want of subject matter jurisdiction.

I.

In about August 1979, Oliver Gibbs submitted an "Application for a Retirement Pension Benefit" to Central States stating that he was retiring on October 26, 1979. Central States is a multiemployer pension plan. At the time he submitted his application, Gibbs was married to, but separated for thirteen years from, Cobb. In his pension application, Gibbs represented under oath that his spouse was "deceased." Gibbs died in 1985. In 2002

Cobb submitted a claim for the Joint and Survivor Pension Benefit.

When he retired, Gibbs was eligible to receive an unreduced lifetime pension of $675.00 per month, with no pension benefits after his death (the "Lifetime Benefit"). Central States' Pension Plan also allowed a participant to receive or reject the Joint and Survivor Pension Benefit ("JSO") if he met the three eligibility criteria for this plan. Generally, this benefit provides a reduced pension to the participant, and 50% of the reduced lifetime pension as a lifetime monthly income to his/her spouse after the participant's death.

Gibbs would have received a reduced lifetime pension of $588.60 per month, but only by meeting several conditions, including that he had to be married at the time of his retirement. The plan provided that

> [i]n order to be eligible for this pension benefit, you MUST meet each of the following requirements AT THE TIME OF YOUR RETIREMENT:
>
> SSyou MUST be married; and
> SSyou MUST be at least age 55; and
> SSyou MUST be eligible to receive a Twenty-Year Service Pension Benefit, an Early Retirement Pension Benefit or a Vested Pension Benefit from this Plan.

Because Gibbs represented that his spouse was deceased, he did not meet the criteria, so he was never sent an election form for the JSO. He started receiving unreduced lifetime benefits in November 1979. In February 1981 (before Gibbs's death), Cobb contacted Central States and advised it that she was Gibbs's spouse. Cobb stated that she and Gibbs had been separated for "about 15 years" but that they were legally married. Cobb also stated that Gibbs was receiving a pension benefit and that she wanted to receive some of it. Central States informed Cobb that she was not eligible to receive any part of Gibbs's pension because the Pension Plan provided that "[a]ll Pension Benefits provided by this Plan shall be paid directly to the Pensioner, and not to any creditor or other person not eligible for such benefits."

In 2002, Cobb requested benefits from Central States by submitting an Application for Death Benefit. In September, Central States advised Cobb that she was not eligible to receive any benefits because Gibbs did not elect the "Joint and 50% Surviving Spouse Option" when he retired in 1979. Cobb appealed this adverse benefit determination to Central States' Benefits Claim Appeals Committee.

In April 2003, Central States advised her that her appeal was rejected because Gibbs had not elected to have his benefit paid in the JSO form when he retired. Cobb exhausted the administrative appeals process when her appeal was considered by the trustees, who determined that "the communications, acts and omissions by the late Oliver Ray Gibbs, at and around the time of his 1978 [sic] retirement, induced the Pension Fund to rely, and the Pension Fund did in fact actually and reasonably rely, upon his intention to reject the JSO." Cobb appealed this decision in court, but her claim was rejected, so she appeals.

## II.

Cobb asserts district court jurisdiction under section 502(a) of ERISA, 29 U.S.C. 1132(a). That provision, however, limits those who can maintain suit under the statute to "participants," "beneficiaries," or "fiduciaries." *Coleman v. Champion Int'l Corp.*, 992 F.2d

530, 533 (5th Cir. 1993). Because "[w]here Congress has defined the parties who may bring a civil action founded on ERISA, we are loathe [*sic*] to ignore the legislature's specificity," standing to bring an action founded on ERISA is a "jurisdictional" matter.[1]

Accordingly, the issue of whether a particular plaintiff falls within one of the three enumerated classes of litigants (participants, beneficiaries or fiduciaries) is a jurisdictional one. *Herman*, 845 F.2d at 1289. This court has "hewed to a *literal construction* of § 1132(a)" on this issue. *Id.* (emphasis added).

Because the issue of standing is one of subject matter jurisdiction, we raised it *sua sponte* and directed the parties to submit briefing on the issue. Although the basis for inclusion in one of the three jurisdictional classes of ERISA litigants is uncertain from Cobb's complaint, she claims in her appellate brief and supplemental briefing that she is a "beneficiary" to whom the plan trustees owed a fiduciary duty.[2]

ERISA defines "beneficiary" as "a person *designated* by a participant, or by the terms of any employee benefit plan, who is or may become entitled to a benefit thereunder." ERISA § 3(8), 29 U.S.C. § 1002(8) (emphasis added). In favor of jurisdiction, the parties cite a case that involved the definition of "participant," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989), which held that "to establish that he or she *'may become eligible' for benefits*, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* (emphasis added). The parties explain that given that the definition of beneficiary, like the definition of participant, involves the term "is or may become entitled to a benefit," Cobb has standing because she has a "colorable claim" that she may be entitled to benefits. We disagree.

This case involves the definition of "beneficiary," not "participant." Although both require "colorable" entitlement to benefits, the definition of beneficiary additionally requires something that the definition of participant does not: that the "beneficiary" be "designated" as such by the participant or by the terms

---

[1] *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1288-89 (5th Cir. 1988) (analyzing ERISA standing as a question of subject matter jurisdiction); *accord Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001) (finding that lack of standing warrants dismissal for lack of subject matter jurisdiction).

[2] Cobb has never purported to be, a "participant," or "fiduciary" as defined by ERISA; nor can she qualify within those two categories. Section 3(7) of ERISA, 29 U.S.C. § 1002(7), defines "participant" as any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or (continued...)

[2](...continued) whose beneficiaries may be eligible to receive any such benefit. Section 3(21) of ERISA, 29 U.S.C. 1002(21), defines "fiduciary" as a person who (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.

of the plan.[3] Post-*Firestone*, this court has continued to adhere to a "literal construction" of the three classes of plaintiffs with standing, and we have refused to read the "designation" requirement out of the statutory definition: A beneficiary must prove both a "colorable claim" under *Firestone* and a "designation" by the participant or the terms of the plan: A beneficiary is "a person *designated* by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8) (emphasis added).

In *Coleman* we held that a pension plan participant's son, who was his descendant, heir at law, and the representative of his estate, was not a "beneficiary" of the plan with standing to sue under ERISA because (1) the participant never designated the son to receive benefits under the plan, and (2) the terms of the plan, which directed the Trustees to designate a beneficiary from the group of the decedent's spouse, descendants, heirs at law, and representatives of the estate, if there were any benefits "payable," could not designate a beneficiary, because there were no benefits payable (The participant received benefits under the "Lifetime Only" option, as here.):

Charlie Coleman elected to remain under the normal Lifetime Only Income payment option. While this Plan option provides the greatest amount of monthly income, the Plan states clearly that, under this option, at the time of the participant's death, all pension benefits cease.

Because no pension benefits were payable at the time of Charlie Coleman's death, the Retirement Committee was not, and is not now, authorized to name a beneficiary from the list in Section 4.2. As such, the terms of Plan Section 4.2 do not afford Coleman beneficiary status as contemplated in § 1132. Coupled with the fact that Charlie Coleman did not name his son as his beneficiary, this conclusion forecloses any statutory basis for Coleman's assertion of standing.

*Coleman*, 992 F.2d at 533-34.

Under this precedent, Cobb is not a beneficiary. Gibbs never personally "designated [Cobb] or anyone else as beneficiary of his Plan assets." *Id.* at 533. "[T]herefore, [Cobb's] assertion of beneficiary status rests upon the language and terms contained in the Plan." *Id.*

In its letter brief, Central States admits that the plan does not define the term "beneficiary." In her letter brief, Cobb also acknowledges that the plan does not specifically define the surviving spouse as the beneficiary. She argues, however, that because the plan allows for benefits to be paid to surviving spouses of individuals receiving benefits under the JSO plan, she is or may become entitled to a benefit under the plan, which makes her a beneficiary. Again, the fact that Cobb is or may become entitled to a benefit does not necessarily prove the separate requirement that she be "desig-

---

[3] Section 1002(7) defines "participant" as any "employee or former employee . . . *who is or may become eligible to receive . . . employee benefit[s]*" (emphasis added). Section 1002(8) defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, *who is or may become entitled to a benefit* thereunder" (emphasis added). "Therefore, based on the statutory language, a "beneficiary" is not anyone who claims to be one . . . . [but] is one who has a reasonable or colorable claim to benefits." *Crawford v. Roane*, 53 F.3d 750, 754 (6th Cir. 1995).

nated" as a beneficiary by the terms of the plan.

Assuming, *arguendo*, that entitlement to benefits under the JSO would count as a "designation," Cobb's claim fails for the same reason that the son's claim failed in *Coleman*—the plan plainly provides that if the decedent received the lifetime-only benefit, the spouse is *not entitled* to a JSO benefit after his death. The plan section on "Pre-Retirement and Post-Retirement Benefit to Spouse" explains that

> [a] Joint and Survivor Pension Benefit (subject to the election and rejection provisions in "Appendix A" of this Plan) shall be payable to a Pensioner upon Retirement (commencing upon his 55th birthday), or the surviving spouse of a Participant upon his death on or after his 55th birthday but before his Retirement, if the Participant was then eligible for immediate payment of a pension benefit in accordance with Article IV, §2, 3 or 4. Upon death of a Pensioner receiving *this* pension benefit, 50% thereof becomes payable to his surviving spouse . . . .

That is, if the plan participant dies after age 55 but before retirement, the spouse is eligible for a "pre-retirement" benefit if the pensioner was eligible to receive a pension at the time of death. If the plan participant dies after retirement, the spouse is eligible for a "post-retirement" benefit only if the Pensioner was receiving "this" pension benefit, that is, the reduced joint and survivor benefit, not the Lifetime Benefit.

Gibbs did not die before retirement, so only the post-retirement provision could apply here. But Cobb is not "entitled" to any benefit under it, because she does not satisfy one of the eligibility criteria for it: Gibbs was not receiving

"this" benefit (*i.e.* the joint and survivor benefit); he was receiving the lifetime-only benefit.[4]

Therefore, as was the case with the son in *Coleman*, the terms of the plan do not afford Cobb beneficiary status. Under the plan, no pension benefits are to be paid to surviving spouses of those who received benefits under the unreduced Lifetime Benefit option.[5]

Although it may not be advisable to interpret the terms of the plan at this jurisdictional stage, we are bound to do so by *Coleman*, which interpreted the term "payable" under the plan to determine whether the descendant and heir of the plan participant qualified as a beneficiary. Further, the definition of "beneficiary" directs the courts to look to the terms of the plan at the jurisdictional stage to decide whether the terms "designate" a plaintiff as a beneficiary or whether they provide plaintiff with a colorable claim for benefits.[6]

---

[4] *See also* section 17 ("If you die *while receiving* a Joint and Survivor Pension Benefit, your spouse will receive one-half of your pension for the rest of his or her life. . . .") (emphasis added).

[5] This case is also similar to *Lerra v. Monsanto Co.*, 521 F. Supp. 1257 (D. Mass. 1981), in which the widow of a former plan participant alleged that the defendant had failed to disclose sufficient benefit information to the decedent at the time he made his election to receive pension benefits as a "single life annuity." The court held that it lacked jurisdiction because plaintiff, never having been designated as a joint annuitant, was not a "beneficiary" and thus lacked standing to sue under ERISA.

[6] *See, e.g., Crawford*, 53 F.3d at 755 (interpreting a plan provision providing that "a spouse of a married participant must consent to any beneficiary designation which does not name the spouse as a
(continued...)

5

We are aware that in *Sladek v. Bell System Management Pension Plan*, 880 F.2d 972, 976–78 (7th Cir. 1989), which was decided before *Coleman*, the court gave the term "beneficiary" a broader reading than the "literal construction" we provided in *Coleman*. *See id.* at 976 (noting that "it is not proper for us to give an unduly cramped reading to those provisions granting standing to certain classes of persons under the Act, i.e., participants, beneficiaries, and fiduciaries. . . . [T]his Court has consistently given the definition of "fiduciary" found in § 1002(9) a 'broad reading'"). *Sladek* relied *inter alia* on the "zone of interest" analysis that we rejected in *Coleman*.

Furthermore, *Sladek* is distinguishable because there the benefit plan itself designated plaintiff, the deceased participant's spouse, as survivor annuitant, unless the participant elected to receive an unreduced lifetime-only benefit. Although in *Sladek* the participant elected to receive the lifetime-only benefit, the surviving spouse argued that the election was voidable because the participant was incompetent to make a decision because of Alzheimer's Disease. In contrast, here, Gibbs's *de facto* election of the Lifetime Benefit[7] is not voidable

even if he misrepresented that his wife was deceased.[8] Because Gibbs retired in 1978, he was entitled to select the Lifetime Benefit without the consent of his spouse.[9] Therefore, his harmless misrepresentation does not render his election voidable.

Cobb also argues in her letter brief that alternatively, she has standing under the "but for" analysis in *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992). We rejected that argument in the analogous situa-

---

[6](...continued)
sole beneficiary of the participant's death benefit" as not providing a colorable claim to beneficiary status (and standing) to participant's children, where the spouse did not consent to a beneficiary other than her to be named as a beneficiary).

[7] The Plan documents explain that when an application for retirement benefits is made, an election form will be mailed to those eligible for the JSO. Because Gibbs declared under oath that his wife was deceased, he was not eligible for the JSO, which requires that the participant be married—that is, that the spouse be alive—at the time the JSO
(continued...)

---

[7](...continued)
eligibility is determined.

It would have been pointless for the Plan to send Gibbs an election form as Cobb suggests: what was there to elect? Accordingly, the default provision, that in the absence of an election of the "Lifetime Benefit," the pension will be paid as a "Joint and Survivor Benefit," is inapplicable; it applies only if an employee is entitled to the JSO. Therefore, by declaring that his wife was deceased, Gibbs rendered himself eligible for only the Lifetime Benefit.

[8] It is uncertain whether Gibbs did make a misrepresentation. Cobb has not proved that Gibbs made a knowing misrepresentation, namely that he knew that his estranged wife was still alive.

[9] Before 1984, the spouse of a participant was not required to join in an JSO election. *Boggs v. Boggs*, 520 U.S. 833, 843 (1997). "It was not until August 23, 1984, to be effective January 1, 1985, that congress amended 29 U.S.C. § 1055 to require pension plans to offer joint and survivor annuities unless otherwise elected by the participant and his spouse." *Williams v. Wright*, 783 F. Supp. 1392, 1400-01 (S.D. Ga. 1992) (citing Retirement Equity Act of 1984, P.L. 98-397, Title I, Section 103(a), 98 Stat. 1429). The amended act does not apply to Cobb, "because it did not take effect until January 1, 1985." *Id*.

tion we faced in *Coleman*, where we explained that

> *Christopher* clearly poses a different scenario than [*sic*] the one we face today. In *Christopher*, this court restored ERISA standing to individuals who had standing but were divested of that standing through the ERISA violations of their employer. The employees alleged that they had been wrongfully induced to retire, and but for the ERISA violation, would have continued their employment and plan participation, thereby retaining status to sue under ERISA.

> In the present case, *Coleman* never had standing to sue under ERISA since he was neither a Plan participant nor a beneficiary. Thus, even if the Coleman's allegations of ERISA improprieties were true, those violations could not be said to have divested him of his status to sue. As such, *Christopher* does not help the appellant.

*Coleman*, 992 F.2d at 535.

The instant case is similar to *Coleman* in that Cobb was never a plan participant or a beneficiary, because Gibbs never received the JSO post-retirement, but only a Lifetime Benefit, which did not entitle Cobb to benefits after Gibbs' death. Because Gibbs could select the Lifetime Benefit without the consent of his wife, there is no pre-existing standing that Cobb had and of which Gibbs' misrepresentation divested her.

Nor was there a duty for Central States to correct Gibbs's misrepresentation about his wife's death once it learned about it in 1981. The plan's terms provide that in case of a misrepresentation, Central States "may" recover any benefit payments that Gibbs was not enti-

tled to receive, not that the Central States "will" or "must" recover such benefits. Also, as explained, Gibbs was entitled to receive the Lifetime Benefit without the consent of his spouse, so Central States had no right to recover the excess Lifetime Benefit payments from him to keep them in trust for his wife.

Last, there was no duty owed by Central States to Cobb as a "beneficiary" to insure that Gibbs submitted adequate documentation of his marital status. Before 1985 Gibbs had the right to elect the Lifetime Benefit without the consent of his spouse. Therefore, any documentation burden Central States would have imposed, in addition to the application signed under oath by Gibbs, would not have protected Cobb against the harm of which she complains—that Gibbs did not intend her to receive a survivor benefit. Although Congress enacted legislation in 1984 to protect spouses like Cobb of this harm, unfortunately for her, as we have explained, that legislation does not apply retroactively to this case.

In summary, the district court lacked subject matter jurisdiction. The judgment, accordingly, is VACATED, and this matter is REMANDED with instruction to dismiss the complaint for want of jurisdiction.

7